Burd, Appellant, *v.* Campbell Hosiery Company, Inc. et al.

Argued December 8, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Samuel J. Gottesfeld,* with him *Sigmund H. Steinberg, Edward Foulke* and *Blanc & Steinberg,* for appellant.

*Louis M. Childs, II,* with him *Samuel H. High,* of *High, Dettra & Swartz,* for appellees.

OPINION BY KENWORTHEY, J., September 30, 1942:

We shall state only the facts essential to an understanding and consideration of the narrow issue presented by this appeal.

Both parties were guilty of a breach of contract. The action was to recover the market value of 1030 dozen pairs of silk stockings belonging to plaintiff and which defendant refused to deliver on demand. The court found defendant guilty of a conversion of the stockings, that their market value at the time of the conversion (plus a small amount of silk belonging to plaintiff which was unused) was $5586.33. It made a finding in favor of plaintiff in the net amount of $1721.25. This figure was reached by making certain deductions, one of which was an allowance of $1200, representing defendant's loss caused by plaintiff's breach.

The single question is whether the record will support this allowance or whether, as plaintiff contends, it should have been $362.85.

The only exceptions were filed by plaintiff; he has appealed from the order overruling them.

Under the terms of the contract, defendant agreed to manufacture silk stockings from material to be furnished by plaintiff. Plaintiff agreed to furnish sufficient material to enable defendant to maintain a production rate of 700 dozen pairs per week. If plaintiff had lived up to this undertaking, defendant, during the

life of the contract, would have manufactured 4200 dozen pairs. Instead plaintiff furnished sufficient material to manufacture 2150 dozen pairs only.

It is conceded the measure of defendant's damage is the loss of profits it would have realized on the manufacture of the balance (2050 dozen pairs), represented by the difference between the contract price ($2.75 per dozen) and defendant's cost of manufacture.

The dispute is over the method employed by the court in determining the cost of manufacture.

It is agreed that defendant's direct labor costs on the 2150 dozen pairs manufactured were $1.667 per dozen. The court found:

"29. In addition to these direct labor costs, defendant expended in connection with the manufacture of hosiery for plaintiff the following indirect operating costs, to wit:

| | |
|---|---|
| Supplies and repairs | $ 393.23 |
| Needles—replacements | 242.72 |
| Social Security and Unemployment Compensation (approximately) | 199.40 |
| Learners | 75.77 |
| Fixer | 390.00 |
| Production loss | 648.74 |
| Making a total of | $1949.86" |

If the sum of these "indirect operating costs" ($1949.86) is divided by the number of dozen pairs manufactured (2150), and the result (.906) added to the direct cost ($1.667), the total cost of manufacturing is shown to have been $2.573 per dozen. By subtracting this from the contract price ($2.75 per dozen), it indicates a profit of $.177 per dozen.

Plaintiff contends that this profit measures the damage to which defendant is entitled and that when it is multiplied by the additional number which the court found would have been manufactured (2050 dozen

pairs), if plaintiff had furnished the material required by the contract, the result ($362.85) represents the amount which should have been allowed defendant. But plaintiff's calculation overlooks an important principle. Although $.177 per dozen indicates the narrow margin of profit which defendant was able to make on the portion of the contract completed, to hold the defendant would not have made a larger profit on the balance would be to ignore the fact that the operation at little over 50% production capacity was uneconomical and virtually unprofitable. The court expressly found that plaintiff's failure to supply materials caused defendant to "operate at a loss under the contract." Since the books indicated the operation was not actually in the red, we construe this finding to mean that the profit was lower than would have been realized if the higher production rate had been maintained.

The court's twelfth conclusion of law was as follows:

"In a suit to recover for refusal to permit [defendant] to perform a contract in ascertaining [defendant's] damage, to wit, his profits or the difference between the contract price and what it would have cost [defendant] to perform, such overhead expenses incurred by [defendant] as would be constant in character and would not have been affected by the performance of the additional work cannot be used as an item or element to reduce or increase the damage allowable, particularly such items as ....... operative costs or charges necessarily involved in the general operation of the business." This is an accurate statement of the rule. See *Jessup & Moore Paper Co. v. Bryant Paper Co.*, 297 Pa. 483, 492, 493, 147 A. 519. And the court found that:

"30. The following items expended by defendant in manufacturing hosiery for plaintiff were carried by defendant on its books as 'indirect labor costs', to wit:

Learners ............................... $75.00
Fixer .................................. 390.00
Production loss ........................ 648.74"

We have read the testimony although it was not printed. It is clear that these "indirect labor costs" represent expenses which would not have recurred in the manufacture of the balance of the stockings called for by the contract. The "Production loss" and "Learners" expenses were made necessary by the low production rate, the "Fixer" was employed to make adjustments upon the machines and to take general care of the machinery; and clearly represented an overhead expense. The sum of these costs is $1113.74. If they are deducted from the total indirect operating costs of $1949.86, the result indicates the recurring costs or the only ones to be considered in calculating what it would have cost to manufacture the balance. A recalculation on that basis would indicate a profit of $.69 per dozen pairs, or a total profit of $1414.50.

The court made 51 findings of fact and 20 conclusions of law. No exceptions were taken to any of them except the 34th and 35th findings of fact and the 10th conclusion of law which deal with the $1200 allowance. There is no question of the sufficiency of the evidence to sustain all the findings. In our opinion, the finding: "35. Under all the evidence the Chancellor finds that such loss amounted to at least $1200," is supported by the other findings.

The judgment is affirmed.

STADTFELD, J., dissents.