Clement Martin, Inc. *v.* Gussey, Appellant.

Argued November 12, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Franklyn E. Conflenti,* for appellant.

*Edward J. Martin,* with him *Goehring, McWhinney & Grubbs,* for appellee.

466

OPINION BY GUNTHER, J., December 17, 1959:

This appeal is from the granting of a judgment n.o.v. after a verdict was returned in favor of the defendant. Clement Martin, Inc., a corporation, brought suit in assumpsit against Thomas Gussey, trading and doing business as Thos. Gussey Floor Contracting Company, appellant, to recover damages in the sum of $3,600.00 for an alleged breach of contract.

Early in 1954, the School District of Mt. Lebanon, in Allegheny County, requested bids for an addition to its high school. Clement Martin, Inc., being desirous of obtaining this work, requested bids from certain subcontractors for wood and resilient floor tiling and other items. One of the bids for this specific work was received from appellant who proposed to do both types of flooring work for the sum of $38,300.00. This proposal was submitted orally the same day the bid for the overall work was submitted by appellee and was used by it in the computation of price. Shortly thereafter, Clement Martin, Inc., was awarded the job as low bidder.

On July 7, 1954, appellant submitted his proposal for the wood and resilient floor work in writing, in which the resilient flooring was quoted at $17,400.00 and the wood flooring at $20,000.00 as unit prices. This proposal stated: "The separate phases of work quoted under unit amounts are for your information only. An agreement shall not be acceptable that reduces the quantity of work, to be performed, or the total lump sum of this proposal." After the proposal was submitted and received, Clement Martin, Inc., submitted appellant as a proposed subcontractor to the architects supervising the construction for approval. On August 19, 1954, the appellee was informed that appellant had been rejected as a subcontractor but this information was not conveyed to appellant by either the architects or appellee. Nevertheless, on November 2, 1954, ap-

pellee entered into a written contract with appellant, wherein appellant agreed to furnish all labor, material and equipment necessary to furnish and install all resilient flooring on said job for the sum of $17,400.00. Subsequently, appellee prevailed upon the architects to accept appellant as a subcontractor. This, too, was without the knowledge of appellant.

Appellant testified that at the time this contract was entered into, appellee informed him that the wood flooring contract was also his as appellant was the low bidder on both types of flooring, and that as soon as the contract could be prepared, he could sign it. He was informed that the office procedure of appellee required separate contracts. Appellant stated that he continually inquired about the wood flooring contract but it was not until the spring of 1955 that he discovered that this contract was awarded to another subcontractor back in December, 1954.

Several letters were written by appellee to appellant to submit samples of the materials to be used but appellant refused to submit them. In May, 1955, appellant was advised to proceed with the work and, having failed to do so, on July 18, 1955, he was informed that, because of his refusal to proceed, the appellee would obtain another subcontractor. Appellee then entered into a contract for this work with another contractor for the sum of $21,000.00, and subsequently brought the present action to recover the difference between appellant's bid and the price paid for the work.

Appellant contended that the parties had agreed that he was to be awarded not only the resilient flooring contract but also the wood flooring contract and that he was induced by appellee's fraud to sign the contract for the resilient flooring in the sum of $17,400.00. In addition, appellant set up two counterclaims, one in the amount of $786.00 for balance due on previous work done for appellee, and the other in

the amount of $2,000.00 as loss of profit for failure to grant him the wood flooring contract. The jury returned a verdict in favor of appellant, awarding the sum of $2,000.00, without interest, and the sum of $786.00 with interest from June, 1955 to May 16, 1958. The jury also found a verdict in favor of appellant as against appellee's claim.

Appellee filed motions for a new trial and for judgment n.o.v. The motion for a new trial was refused but the motion for judgment n.o.v. was granted on the grounds that there was insufficient evidence to sustain the allegations of fraud and that appellant, having rescinded an executory contract because of fraud, could not claim loss of profit on such contract. The court below directed the Prothonotary to enter judgment in favor of the appellee in the sum of $2,672.52, being the $3,600.00 claimed to be due for the difference in contract price less the counterclaim of appellant admitted to be due in the amount of $786.00, with interest in the amount of $141.48. From this adjudication, appellant has taken this appeal.

Two questions are raised for our determination: (1) Was there sufficient evidence of a clear, precise and indubitable nature presented as to overturn a written instrument on allegation of fraud, and (2) May a party recover loss of profit on a contract which he did not get because of fraudulent representations?

The court below concluded that there was nothing to support appellant's allegation of fraud except his own uncorroborated testimony which was denied by appellee. While we hold in great esteem the learned opinion of the court below, we cannot agree with this conclusion. A review of the evidence discloses a number of instances of corroboration to which we shall refer.

Where a party is induced to enter into a transaction with another by means of the latter's fraud or ma-

terial misrepresentation, such a transaction can be avoided by the innocent party. Fraud arises where the misrepresentation is knowingly false or where there is a concealment of facts calculated to deceive. Fraud renders a transaction voidable even where the misrepresentation is not material. A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have been entered into. See Restatement, Contracts, sections 470, 471, 476.

The evidence discloses that from the very beginning, appellant made it very plain that no agreement would be acceptable to him which would reduce either the quantity of the work to be performed or the total lump sum of the proposal. It is evident that appellant expected to get both flooring subcontracts or none at all. The evidence clearly discloses that when the name of appellant was submitted for approval, he was rejected generally. Mr. Ingham, one of the architects, testified to this unequivocally: "Q. You had rejected Mr. Gussey in that letter, is that right? A. Yes. Q. And had you rejected him for asphalt tile or wood, or had you rejected him generally? A. Generally. Q. You didn't specify in your rejection that he was rejected for one job or another job, did you? A. No, sir." On the other hand, the witnesses for appellee testified that appellant was rejected only as to the wood flooring contract.

It was testified to by appellee that subsequent to this rejection, the appellant was approved by the architect for the resilient flooring only. However, here again, the architect disputes such testimony: "Q. Now, if you approved him for resilient flooring, had you been asked, would you not also have approved him for wood flooring? A. Well, I would have to assume in answering that question that the same circumstances prevailed which allowed me to approve him for resilient

flooring. Q. If the same circumstances prevailed, would you approve him for wood? A. Yes." Yet the testimony of the witnesses for appellee stated categorically that appellant was approved only for the resilient flooring. Furthermore, appellant was informed by appellee that the architect would not approve him for the wood flooring and therefore, it could not grant him that contract. A. B. Merz, engineer and estimator for appellee, testified as follows: "Q. Now, at that time did you tell Thomas Gussey anything in regard to the wood flooring contract? A. Yes, I did, either at the time of the signing of this contract, or immediately previous to it; that is, a day before or so. I told Mr. Gussey that originally he had been rejected by the architect both as to asphalt tile and wood flooring; that we had gone to the architect and talked to him again about the matter of approval, and he had been approved only for the resilient flooring portion. Q. In other words, at the time of the signing of this contract, then, Thomas Gussey knew that he had been rejected? A. That is correct. Q. Did he at that time ask whether he would receive the wood flooring work on the Mt. Lebanon job? A. I don't recall, but if he did I would have had to tell him that I couldn't give him the wood flooring on account of his being rejected."

Clement Martin for the appellee testified that he informed appellant that he was the low bidder on both contracts. However, the record discloses that he knew or should have known that another subcontractor actually submitted a lower bid. Andrew Thompson Floor Company submitted a bid of $19,071.00. This was a material misrepresentation calculated to work in favor of the appellee. Having received a bid for resilient flooring which was lower than that submitted by anyone else, appellee was willing to accept appellant on this phase of the work. As a matter of fact, appellee convinced the architect that he should be accepted as

a subcontractor. However, when the bids for wood flooring were received, appellant's bid was higher than that of the other bidder by almost $1,000.00. It was, therefore, more advantageous to it to accept the bid for resilient flooring only from appellant and refuse the bid for wood flooring. In order to accomplish this end, appellee misrepresented to appellant that he was rejected by the architect, and continued to represent that he was low bidder on the wood flooring.

We conclude, therefore, that this record clearly discloses corroboration of appellant's allegation of fraud which is clear, precise and indubitable. The subterfuge resorted to by appellee was designed to induce appellant to sign a contract on one phase of the work while the other phase of the bid was ignored on one pretext or another. Other testimony in the record disclosed that knowledge of rejection came to appellant subsequent to the signing of the contract for resilient flooring. These circumstances created the right to disaffirm the signed contract and, when appellee sought to enforce the same in this action, appellant properly defended on the ground that the contract was rescinded and he refused to perform because of the fraudulent representations made. We believe that the evidence produced surrounding the execution of this contract was sufficient to warrant the court below in submitting the case to the jury on the question of fraud.

The question of whether loss of profit may be claimed on an unexecuted agreement presents a different problem. Appellant presented a counterclaim for loss of profit on a contract which he did not get by reason of the fraud disclosed in the record. Having disaffirmed the signed contract because of fraud, appellant has exercised his remedy and he cannot, in the same action, claim the benefits of an argument which he did not get by reason of the same fraud. See *Pittsburgh Stock Yards Company v. Pittsburgh Joint Stock*

*Company,* 309 Pa. 314, 319, 163 A. 668; *Emery v. Third National Bank of Pittsburgh,* 308 Pa. 504, 162 A. 281; Restatement, Contracts, section 485. Appellant's theory of defense was to the effect that at the time he signed the contract for resilient flooring, this did not cover all the terms of the work to be done and that the fraud perpetrated was to the contract as a whole. Under such circumstances, he had the option either to avoid the entire contract or to affirm and seek recovery for the actual damages suffered. Having elected to avoid, he is precluded from claiming benefits which would normally flow from affirmance. Furthermore, loss of profit on a contract not entered into and not performed is speculative and uncertain and not a proper measure of damages. *Murphy v. Pitt Construction Co.,* 52 Pa. Superior Ct. 316; *Crawford v. Pituch,* 368 Pa. 489, 84 A. 2d 204.

Appellant claims, however, that such damage was not, actually, loss of profit but recovery of expenses to which he was put in preparing the bids for the proposed work. The damages recoverable are only such as can be said to have been the immediate and proximate consequence of the deceit practiced upon appellant. Overhead expenses which are constant in character and which would not have been affected by the performance of additional work cannot be used as an item of damage, particularly when the items of expense incurred in the preparation of bids are part of the operation of this type of business. *Burd v. Campbell Hosiery Co.,* 150 Pa. Superior Ct. 367, 28 A. 2d 365. We believe, therefore, that the court below properly awarded the judgment n.o.v. on the item of $2,000.00 awarded to appellant by the jury.

However, the counterclaim in the amount of $786.00 together with the interest awarded thereon stands in an entirely different category. This counterclaim had nothing to do with the fraud or the disaffirmance of

the contract. This was a claim asserted against the claim of the appellee and was admitted by appellee as due and owing. The jury, having been instructed to consider this as a separate item of damage from that of the counterclaim of $2,000.00, properly arrived at this verdict. The court below, in effect, refused judgment n.o.v. on this claim but offset this award against the claim of appellee. We believe this item of damage should have been permitted to stand.

We believe judgment n.o.v. on the entire record was improper. As indicated, the verdict of the jury on the counterclaim of $2,000.00 should be set aside as improper, and the verdict on the second counterclaim in the amount of $927.48 should be permitted to stand.

The decision of the court below is reversed with directions that a proper order be entered not inconsistent with this opinion.