2018 PA Super 59

| | | |
|---|---|---|
| GAMESA ENERGY USA, LLC AND GAMESA TECHNOLOGY CORPORATION INC. | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| TEN PENN CENTER ASSOCIATES, L.P. AND SAP V TEN PENN CENTER NF G.P. L.L.C. | | No. 1635 EDA 2016 |
| Appellants | : | |

Appeal from the Judgment Entered May 20, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2013 No. 03678

BEFORE:   PANELLA, J., LAZARUS, J., and STEVENS*, P.J.E.

OPINION BY PANELLA, J.                    **FILED MARCH 19, 2018**

This appeal involves a commercial landlord/tenant dispute. Ten Penn Center Associates, L.P. and SAP V Ten Penn Center NF G.P. L.L.C (collectively, "TenPC"), appeal from the judgment entered in favor of Appellee, Gamesa Energy USA, LLC and Gamesa Technology Corporation, Inc. ("Gamesa"), by the Philadelphia Court of Common Pleas following a nonjury trial. The record supports the trial court's factual findings regarding the breach of the sublease provision. Gamesa, however, elected contract damages over the remedy of rescission. And the trial court improperly conflated the terms "vacate" and "abandon." Accordingly, we affirm in part and reverse in part.

In 2008, Gamesa signed a contract (the "Lease") with TenPC to lease approximately 35,000 square feet of office space in TenPC's building, located

_____
* Former Justice specially assigned to the Superior Court.

at 1801 Market Street, Philadelphia (the "Premises"). The Lease, which was scheduled to run until September 1, 2018, provided Gamesa with a credit, named "the tenant improvement allowance," for Gamesa to construct the office space to its specifications. The Lease also permitted Gamesa, with TenPC's prior approval, to enter into subleases for portions of the Premises.

In May 2011, TenPC approved Gamesa's request to sublet approximately 15,000 square feet of office space to Viridity Energy, Inc. Gamesa's sublease with Viridity was scheduled to run until August 30, 2018. TenPC permitted Gamesa to use a portion of its tenant improvement allowance to outfit the office space for Viridity's needs.

Subsequently, after giving one month's notice to TenPC, Gamesa vacated the Premises in May 2012. Viridity remained at the Premises under the terms of its sublease with Gamesa. Additionally, while Gamesa submitted its June rent payment late, both parties agree that Gamesa continued to make rent payments after it vacated the Premises.

On June 12, 2012, Gamesa submitted a request for TenPC's consent to sublet a portion of its remaining office space to Business Services International, LLC ("BSI"). TenPC's initial response to this request was to inform Gamesa that it defaulted on the terms of the Lease by vacating the Premises and making a late rent payment, and thus absolved TenPC of the responsibility of entertaining any requests for subleases. Nevertheless, TenPC requested additional information concerning BSI's financials from Gamesa to evaluate the sublease request under the terms of the Lease.

Gamesa responded to TenPC's letter on July 5, 2012, denying the alleged default, once again requesting the approval of the BSI sublease, and providing TenPC with the requested information about BSI. In response, TenPC reiterated its belief that it was not required to entertain the proposed sublease, and proposed Gamesa waive its right to use its remaining tenant improvement allowance in exchange for TenPC's approval of the sublease. Following this correspondence, negotiations between the parties stalled.

On March 23, 2013, Gamesa filed a complaint against TenPC, asserting claims including breach of contract, unlawful interference in business relations, and unjust enrichment. Gamesa alleged TenPC breached the Lease by failing to accept or reject the proposed BSI sublease within 30 days, pursuant to the terms of the lease. As a result, Gamesa alleged that TenPC had materially breached the terms of the Lease and asked for damages arising from the breach, as well as a declaration that the Lease had been terminated as of the date TenPC failed to accept or reject the sublease. Further, through its claim for unjust enrichment, Gamesa requested the return of the rent paid following the alleged material breach. TenPC denied these allegations.

The matter proceeded to a nonjury trial. Only two witnesses were called: Jamie Rodriguez, Gamesa's general services manager, and Daniel Busch, a managing member of one of TenPC's limited partners. Rodriguez testified the sublease with BSI was never consummated due to TenPC's delay in approving or denying the proposed BSI sublease. Rodriguez also confirmed Gamesa continued to pay rent under the Lease, had used its remaining tenant

improvement allowance to improve space within the building, and, at the time of trial, was looking for a subtenant with TenPC's approval. And he confirmed Viridity continued to pay Gamesa rent under the terms of the sublease from the time Gamesa vacated the Premises until the time of trial.

Busch established the course of action TenPC took, as described above, and reiterated that Gamesa was in default in the summer of 2012 after vacating the Premises. Busch also claimed TenPC's reluctance in approving the proposed sublease with BSI stemmed partially from TenPC's belief that BSI did not appear to be a financially stable company. Therefore, he did not believe TenPC's action in conditioning approval of the sublease upon Gamesa's waiver of the remaining tenant improvement allowance was unreasonable.

Ultimately, the trial court ruled in favor of Gamesa. The court found TenPC had materially breached the lease by advising Gamesa it was in default and by failing to approve or reject the proposed BSI sublease within 30 days of its presentation. Because of this breach, the court awarded Gamesa damages equal to the amount it would have received under the three-year BSI sublease. And the court found TenPC's material breach was sufficient to terminate the lease as of July 22, 2012. As a result, the court found TenPC was unjustly enriched in the amount of rent Gamesa paid to TenPC from that date through December 2015. Lastly, the trial court found that despite the termination of the lease, Viridity's sublease was to remain in effect until its August 30, 2018 expiration date.

Both Gamesa and TenPC filed post-trial motions. Gamesa requested the court mold the verdict to include pre- and post-judgment interest. In contrast, TenPC requested the court vacate its judgment against it. And it presented a motion to supplement the trial record with evidence that Gamesa had subleased space in the building after trial. The trial court granted Gamesa's request to mold the verdict and denied TenPC's motions.

After the entry of judgment, this timely appeal followed. TenPC presents seven issues for our review. *See* Appellant's Brief, at 4-6.

We apply the following standard of review to a nonjury trial verdict:

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co*., 53 A.3d 53, 60-61 (Pa. Super. 2012) (citation and quotation marks omitted; brackets and ellipses in original). The trial court, as the finder of fact, is free to believe "all, part or none of the evidence presented." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006) (citation omitted). "Issues of credibility and

conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder." ***Id***. (citation and internal quotation marks omitted).

TenPC's first two issues center upon the trial court's determination it breached the terms of the lease.

"[A] lease is in the nature of a contract and is to be controlled by principles of contract law." ***Pugh v. Holmes***, 405 A.2d 897, 903 (Pa. 1979).

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Loughman V. Equitable Gas Co., LLC***, 134 A.3d 470, 474 (citation omitted).

To prove a breach of contract, a party must establish the following: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages." ***McCausland v. Wagner***, 78 A.3d 1093, 1101 (Pa. Super. 2013) (citation and internal quotation marks omitted).

TenPC first contends the trial court misconstrued the evidence and the terms of the Lease when it concluded TenPC breached its duties under the

Lease by incorrectly declaring Gamesa in default and conditioning its consent to sublet. Instead, TenPC argues Gamesa *was* in default under the Lease when they requested the BSI sublease.

The analysis of the trial court and the arguments of the parties in general center on the default and subletting provisions in the Lease. The first provision at issue is provision 22, the default provision. Under this provision, "[i]t shall be an '**Event of Default**' under th[e] Lease if … [Gamesa] vacates the Premises…." Lease, at ¶ 22.

The trial court concluded Gamesa had not defaulted under this section of the Lease because it did not show an intent to *abandon* the Premises. Whether Gamesa abandoned the Premises is not at issue. The Lease did not use the term "abandon." It used "vacate." Two entirely different concepts.[1] The trial court was required to interpret the contract the parties expressly adopted, not something of its own design. We therefore conclude the trial court's analysis was incorrect.

By using the correct term "vacate," it is clear that the trial court erred as a matter of law in finding breach on this basis. The Lease clearly specified Gamesa would be in default if it vacated the Premises. Gamesa vacated the

---

[1] "Vacate" is defined, in pertinent part, as "to give up the incumbency or occupancy of." Merriam-Webster, available at https://www.merriam-webster.com/dictionary/vacate (last visited 2/28/18). "Abandon," by contrast, is defined, in pertinent part, as "to give up with the intent of never again claiming a right or interest in." *Id*., at https://www.merriam-webster.com/dictionary/abandon (last visited 2/28/18).

Premises when it moved from the building in May 2012. As such, TenPC correctly asserted Gamesa defaulted under the terms of the Lease. While TenPC was entitled to pursue legal remedies because of this breach, it acknowledged at trial that it chose not to terminate the lease or pursue damages, and therefore waived these remedies.

Turning to the trial court's next finding of breach, that TenPC unreasonably withheld consent to sublet, we look to the Lease's sublease provisions. TenPC claims its conditional offer constituted a rejection of Gamesa's request within the required 30-day time period. Additionally, TenPC justifies its conditional offer based on BSI's poor financials.

Pursuant to the terms of the Lease, Gamesa was not permitted to sublet portions of the Premises to another party "without [TenPC's] prior written approval, which approval shall not be unreasonably withheld, conditioned or delayed." Lease, at ¶ 20.1. And after Gamesa submitted a written request, including "the name, address, and description of the proposed … subtenant, its most recent financial statement and other evidence of financial responsibility," to TenPC for its review, TenPC was required to approve or deny the request within 30 days. *Id*., at ¶ 20.2.

Here, the trial court found TenPC breached its duties under both provisions 20.1 and 20.2 of the Lease. The court found TenPC breached provision 20.2 by failing to accept or reject Gamesa's sublease request with

BSI by July 22, 2012—30 days after the request was initially made.[2] However, TenPC argues, and we agree, that under the terms of the Lease, the 30-day time period did not begin to run until Gamesa supplied TenPC with all of the information required by provision 20.2. The evidence adduced at trial, undisputed by Gamesa, shows Gamesa did not include the most recent financials for BSI, a necessary document under provision 20.2, until its July 5, 2012 letter and renewed request for the BSI sublease. Therefore, under the 30-day deadline in provision 20.2, TenPC was required to approve or deny this request by August 4, 2012.

Despite the trial court's finding otherwise, it is evident TenPC denied this request on July 13, 2012, when it proposed that Gamesa waive its remaining tenant improvement allowance in exchange for approval of the proposed sublease. This proposal clearly constituted a counter-offer. A counter-offer extinguishes the original offer and places a new offer on the table for the parties to review. **See**, **e.g.**, **Yarnall v. Almy**, 703 A.2d 535, 539 (Pa. Super. 1997). Thus, TenPC rejected Gamesa's sublease request through its counter-offer on July 13, 2012, within the 30-day period provided under the Lease. Therefore, the trial court committed an error of law when it found that TenPC failed to accept or reject the sublease within 30 days.

---

[2] The trial court's calculations appear to be inaccurate. Gamesa's first request to TenPC for approval of its BSI sublease was made on June 12, 2012. Using this date, the 30-day time period for approval would be July 12, 2012.

However, we find no error in the trial court's conclusion that TenPC unreasonably conditioned its approval of the BSI sublease, and therefore breached one of its duties under the Lease. While TenPC claims it reasonably conditioned its sublease approval based upon Gamesa's default under the Lease and BSI's poor financials, the trial court found otherwise. Specifically, the trial court found that Gamesa's request was a "good faith and reasonable sublease application." Findings of Fact and Conclusions of Law, 2/23/12, at 5-6 ¶ 21. The trial court clearly did not believe the evidence presented by TenPC at trial that TenPC's decision to deny the sublease application was based upon Gamesa's default and BSI's poor financials. As an appellate court, we will not challenge a trial court's credibility determinations. Thus, we find no error in the trial court's determination that TenPC unreasonably conditioned its sublease approval.

TenPC alleges Gamesa cannot prove damages based on an unexecuted sublease, and cannot rely on the inadmissible testimony of Gamesa's representative that BSI "moved on" due to Gamesa's inability to obtain approval from TenPC.

In relation to the damages prong of a breach of contract analysis, our Supreme Court has provided that

> [w]here one party to a contract, without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time

they made the contract, and (3) they can be proved with reasonable certainty.

***Ferrer v. Trustees of the Univ. of Pennsylvania***, 825 A.2d 591, 610 (Pa. 2002) (quotation marks and citation omitted). A damage award should "place the non-breaching party as nearly as possible in the same position [it] would have occupied had there been no breach." ***Helpin v. Trustees of Univ. of Pennsylvania***, 10 A.3d 267, 270 (Pa. 2010) (citation and internal quotations omitted; brackets in original).

Despite TenPC's claims, Gamesa provided the terms of its BSI sublease to the court. Rodriguez testified BSI had agreed to a term of three years with a total rent of $265,460. This information was also contained within Gamesa's July 5, 2012 letter to TenPC. And Rodriguez testified the sublease remained unexecuted as Gamesa never received consent from TenPC for the sublease with BSI.

While TenPC claims the court relied on inadmissible hearsay from Rodriguez that BSI "moved on" when it could not get sublease approval from TenPC, the court found this statement was offered to explain a course of conduct, and thus did not constitute hearsay. We find no error with this evidentiary ruling. ***See Commonwealth v. Tselepis***, 181 A.2d 710, 712 (Pa. Super. 1962) (finding a statement is properly qualified as an explanation of a course of conduct if it is "evidence as to the reason action is taken[]").

Based upon this evidence of record, the trial court found TenPC's breach resulted in reasonably certain damages of $265,460, or the amount due under

the BSI sublease. We discern no error in this finding, as the evidence presented was legally sufficient. So, TenPC's claim that the trial court's finding of damages was unsupported by the record, fails.

Next, TenPC challenges the trial court's decision to terminate the lease following its finding of a material breach. TenPC argues Gamesa elected its remedy by continuing under the terms of the Lease. As such, Gamesa should not be allowed to benefit from retroactive termination of the Lease. We agree.

The doctrine of election of remedies denotes "the act of choosing between two or more different and coexisting modes of procedure and relief allowed by the law on the same state of facts." ***Wedgewood Diner, Inc. v. Good***, 534 A.2d 537, 538 (Pa. Super. 1987) (citation omitted). Once a party has unequivocally chosen "one of two or more inconsistent remedial rights," the application of the doctrine precludes them from benefitting from the others. ***Id***. (citation omitted). And,

> [i]n a breach of contract suit, the plaintiff **either** may rescind the contract and seek restitution **or** enforce the contract and recover damages based on expectation. In such a case, the inconsistent nature of those actions is obvious—one cannot attempt to terminate his contractual obligations and, at the same time, seek to enforce the contract and enjoy its full benefits in an action for breach.

***McCausland v. Wagner***, 78 A.3d 1093, 1102 (Pa. Super. 2013) (citations omitted; emphasis in original).

Here, Gamesa elected its remedy by continuing under the terms of the Lease. Following the breach, Gamesa continued to pay rent to TenPC and

received rent from Viridity for the sublease. Both parties agreed at trial that Gamesa requested, and received, the use of the remaining tenant improvement allowance to build out its leased space in the Premises. Further, Gamesa's representative testified that it was searching for tenants to sublease its space in the Premises as recently as the time of trial. Despite Gamesa's contentions that TenPC'c actions in the summer of 2012 justified the rescission of the Lease, all of the evidence points to its continued benefit from the terms of the Lease following summer 2012.

Based upon these actions, the remedy Gamesa had chosen for trial was to enforce the contract and recover based on expectation, *i.e.*, recover the expected rent from the BSI sublease. Thus, the trial court's actions in retroactively terminating the contract and awarding Gamesa damages based upon a theory of unjust enrichment was clearly in error.

Judgment affirmed in part and reversed in part.[3] Jurisdiction relinquished.

Judge Lazarus joins the opinion.

President Judge Emeritus Stevens files a concurring opinion.

---

[3] Given our resolution, we need not address the remainder of Appellant's issues on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/19/18