J-A07005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| B&M SEASONAL SERVICES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SNOW MANAGEMENT, INC. | : | |
| | : | |
| Appellant | : | No. 1200 MDA 2024 |

Appeal from the Order Entered July 26, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201710734

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:             **FILED: JULY 14, 2025**

Snow Management, Inc. ("Snow Management") appeals from the order denying in part its post-trial motions and awarding a net monetary judgment in favor of B&M Seasonal Services, LLC ("B&M") in the amount of $28,537.80, based upon various breach of contract claims asserted by both parties in this case.  We affirm.

By way of background, Snow Management and B&M are both companies engaged in the business of snow plowing and ice removal.  B&M also does general contracting and landscaping work.  In October 2010, the parties entered into a Service Provider Contract ("SPC") wherein B&M agreed to act as a subcontractor for Snow Management and perform snow removal services for several of Snow Management's business clients.  The terms of the SPC provided that the agreement became effective October 22, 2010, ended October 22, 2015, and required that Snow Management pay B&M's invoices

within thirty days of receipt. The SPC also contained at Addendum A a non-compete and non-solicitation provision ("Non-Compete Agreement"), which bound the parties for two years after termination or cancellation of the SPC.

The parties generally operated harmoniously under the agreement throughout the written term. B&M would remove snow from client parking lots and chemically treat them, invoicing Snow Management roughly every two weeks. However, Snow Management was inconsistent in payment, sometimes rendering it within thirty days, and other times taking several months. B&M did not object or otherwise lodge any complaints to this practice. In 2015, Snow Management approached B&M about renewing their arrangement with a new written contract, a draft of which was prepared. B&M declined to execute it, indicating that it did not want to be locked into another long-term agreement. The parties nonetheless continued the business relationship, operating in accordance with the terms of the SPC.

One of the clients of Snow Management was Innovel Solutions, Inc. ("Sears"), a logistics company affiliated with the Sears, Roebuck, and Co., chain of department stores. B&M did not perform work at any Sears location on behalf of Snow Management, which did all snow removal at these sites on its own. In January 2017, Sears terminated its existing contract with Snow Management. Roughly one month later, a representative from a Sears location in Gouldsboro, Pennsylvania reached out to B&M to solicit a bid to perform snow removal work for the remainder of the winter season. B&M

submitted a bid and was awarded the contract. Around this time, Snow Management and B&M ceased their business relationship.

On September 15, 2017, B&M initiated this matter by filing a complaint against Snow Management for unpaid invoices totaling $66,062 from the 2016-2017 winter season, asserting one count each of breach of contract and unjust enrichment. At the end of September, Snow Management's existing contract with another one of its clients, TJX Companies ("TJ Maxx"), was set to expire. TJ Maxx therefore requested bids from between four to six companies, including Snow Management and B&M, for a new agreement.[1] The two companies submitted bids, and the new contract was awarded to B&M. The agreement called for B&M to provide both snow removal and landscaping services.

In light of the above, Snow Management filed four counterclaims against B&M in December 2017: (1) breach of contract with respect to Sears; (2) breach of contract concerning TJ Maxx; (3) breach of contract as to B&M's failure to pay Snow Management for certain services it performed on behalf of B&M;[2] and (4) unjust enrichment as to the same. The parties engaged in

_____

[1] By this point in time, B&M had performed the actual snow removal at TJ Maxx on behalf of Snow Management for several years. Additionally, B&M had provided certain contracting-related services for TJ Maxx during the term of the SPC. Snow Management does not challenge B&M's conduct in performing these other services.

[2] There were several occasions where Snow Management assisted B&M by snowplowing the parking lot of a driver's license center in Hanover, Pennsylvania. This agreement between the parties was oral.

discovery, including taking depositions of four people who were either employees or former employees of TJ Maxx.

The matter proceeded to a non-jury trial in February 2024. The testimony largely bore out the above facts. Furthermore, evidence was introduced concerning damage B&M caused to a salt shed maintained by Snow Management on the TJ Maxx property in question. The parties agreed to enter select portions of deposition transcripts into evidence.

Following trial, the court entered findings of fact and conclusions of law, which, as amended, make several distinct rulings that are pertinent to this appeal. First, the court concluded that with respect to B&M's claim for breach of contract for unpaid invoices, Snow Management owed B&M $66,062.00. Despite this determination, though, the court noted that it did not find Snow Management to be in breach of the SPC provision requiring it to remit payments within thirty days, since late payment became a course of conduct between the parties. *See* Amended Findings of Fact and Conclusions of Law, 7/12/24, at 12 ("Snow Management's continued payments to B&M complied with the accepted course of conduct pursuant to the [SPC] and, accordingly, Snow Management did not breach the [SPC].").

Next, the court determined that B&M did not breach the Non-Compete Agreement when it submitted a bid and later executed an agreement to perform work for the Sears location in Gouldsboro because the evidence established that Snow Management previously only had agreements covering other Sears locations. Thus, the Gouldsboro Sears was not a "snow plowing

client" as the term was defined in the Non-Compete Agreement. Nonetheless, the court concluded that even if B&M did so breach, Snow Management failed to prove damages since Sears had terminated Snow Management beforehand and it would not have awarded Snow Management a new contract, regardless of B&M's bid submission.

Finally, the court held that to the extent the new agreement between B&M and TJ Maxx called for landscaping services, those tasks fell outside the scope of the Non-Compete Agreement, and therefore B&M did not breach by entering into that aspect of the contract. It did find that B&M breached the Non-Compete Agreement by entering into an agreement with TJ Maxx to perform snow removal services. However, the court refused to award damages to Snow Management, holding that the company did not prove that it sustained resultant losses. This was for multiple reasons, namely due to Snow Management: (1) neglecting to parse out lost profits evidence between the snow removal and landscaping portions of the new contract between B&M and TJ Maxx; and (2) failing to convince the court that TJ Maxx would have awarded the new contract to Snow Management but for B&M's involvement.

Snow Management submitted post-trial motions that, in part, challenged some of the invoices submitted by B&M and asked the court to reconsider its other findings. The court granted the motions in part and adjusted the award in B&M's favor downward to $58,479.50. This number was then offset by $29,941.70 that the court found B&M owed to Snow Management based on damage B&M caused to Snow Management's salt shed

and due to B&M's failure to pay for work Snow Management did concerning the driver's license center in Hanover. Hence, the net judgment was to B&M in the amount of $28,537.80.

This timely appeal followed. Both Snow Management and the trial court complied with their respective obligations pursuant to Pa.R.A.P. 1925. Snow Management presents ten issues for our review, which we have reordered for ease of disposition:

1. Did the trial court err in awarding B&M damages of $58,479.50 despite finding that Snow Management did not breach the [SPC]?

2. Did the trial court err against the weight of evidence when it awarded damages of $58,479.50 to B&M?

3. Did the trial court err when it found that the [Non-Compete Agreement] was limited to only snow plowing services and did not also include construction and landscaping services?

4. Did the trial court err against the weight of evidence when it found there was no testimony or evidence that but for B&M, Snow Management would have been awarded the contract with TJ Maxx?

5. Did the trial court err when it found that Snow Management's evidence of damages resulting from B&M's breach of the [Non-Compete Agreement] was not credible?

6. Did the trial court err against the weight of evidence when it ruled that Snow Management did not provide a reasonably certain estimate of the damages it suffered as a result of B&M's breach of the [Non-Compete Agreement]?

7. Did the trial court err by not affirmatively finding that B&M breached the [Non-Compete Agreement] in relation to [Sears]?

8. Did the trial court err against the weight of evidence when it ruled that Snow Management would not have had the contract with [Sears] even if B&M had not entered into a contract at that specific [Sears] location?

9. Did the trial court err against the weight of evidence when it found that Snow Management did not establish a loss of profits due to B&M's breach of the [Non-Compete Agreement] in relation to [Sears]?

10. Did the trial court [err] against the weight of evidence when it found that Snow Management was not entitled to any further profits due to B&M's breach of the [Non-Compete Agreement] in relation to [Sears]?

Snow Management's brief at 4-6 (some capitalization altered).

We begin our analysis with a review of the applicable law:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa.Super. 2023) (cleaned up). To the extent that we undertake interpretation and enforcement of the SPC or Non-Compete Agreement, we decide questions of law. *See*, *e.g.*, *Pops PCE TT, LP v. R & R Rest. Grp., LLC.*, 208 A.3d 79, 87 (Pa.Super. 2019). Further, "we may affirm the decision of the trial court on any valid basis appearing of record." *Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys., Inc.*, 99 A.3d 79, 82 (Pa.Super. 2014).

**B&M's Damages**

We address Snow Management's first two issues together, both of which relate to the trial court's decision to award damages to B&M based on Snow Management's failure to pay invoices in accordance with the SPC. As the plaintiff for this particular breach of contract count, it was B&M's burden to prove its claim by a preponderance of the evidence. ***See***, ***e.g.***, ***Discover Bank v. Booker***, 259 A.3d 493, 496 (Pa.Super. 2021). To succeed, it had to demonstrate the existence of a contract, breach of a contractual duty, and reasonably certain resultant damages. ***Id***.

Our Supreme Court has stated that "[i]t is beyond cavil that breach of contract damages are intended to place the non-breaching party nearly as possible in the same position it would have occupied had there been no breach." ***Vinculum, Inc. v. Goli Technologies, LLC***, 310 A.3d 231, 249-50 (Pa. 2024) (cleaned up). Additionally, "[t]he measure of such damages is compensation for the loss sustained, and the aggrieved party can recover nothing more than will compensate it." ***Id***.

As noted, the trial court awarded damages to B&M based upon Snow Management's failure to pay certain invoices introduced into evidence at trial. In its first claim, Snow Management asserts that this was in error because the court explicitly concluded that Snow Management did not breach the SPC. ***See*** Snow Management's brief at 15. It maintains accordingly that "[w]ithout a breach, there cannot be a non-breaching party" to be made whole, and therefore any award of damages is impermissible. ***Id***. at 15-16 (discussing

- 8 -

***Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.***, 181 A.3d 1188, 1194 (Pa.Super. 2018)).

In addressing this issue, the trial court explained:

> This court's determination that B&M is entitled to . . . damages from Snow Management was based upon invoices and cancelled checks submitted by B&M and testimony explaining same, including cross-examination of [Bryan] Giambra[, the president and sole owner of B&M.] . . .
>
> Additionally, although B&M and Snow Management's course of conduct permitted [Snow Management] to make payments beyond the thirty days required in the [SPC], **Snow Management remains indebted to B&M for work performed on behalf of Snow Management** . . . . Thus, although the court held and continues to hold that Snow Management did not breach the [SPC] **based upon past practice**, Snow Management remains liable to B&M for reimbursement of costs incurred by B&M for services rendered in the amount of $58,470.50.

Trial Court Opinion, 10/22/24, at 17 (cleaned up, emphases added).

In the same vein, B&M argues that the court properly awarded it damages based upon the evidence presented at trial. It first highlights that Snow Management chiefly did not challenge the amounts owed in the unpaid invoices, but sought to offset the amounts due to B&M by any judgment arising from its counterclaims. **See** B&M's brief at 14. Concerning Snow Management's breach of the SPC, B&M argued: "The trial court rule[d that Snow Management's] pattern of slow pay was not in breach of contract since it became a standard course of conduct between the parties. The trial court did not rule [that Snow Management's] failure to pay the outstanding balance that was the subject of [B&M's] complaint was not a breach of contract." **Id**.

at 15. B&M further contends that accepting Snow Management's argument on appeal "would reflect an unfair and unjust result to which [Snow Management] is not legally entitled." *Id*.

Upon review, we find no merit to Snow Management's contention that the court erroneously awarded damages to B&M. We acknowledge that the trial court's language expressed a finding that Snow Management did not breach the SPC; however, it is clear that the court's expression was specific to **the timeliness** of Snow Management's payment. Its conclusion arose from the evidence establishing that although the SPC called for Snow Management's payment within thirty days of being invoiced, the parties regularly permitted late and inconsistent satisfaction, with no objection from B&M.

Rather, the trial court plainly determined that Snow Management owed B&M for work performed pursuant to the SPC, and thus entered judgment reflecting the same. *See* Trial Court Opinion, 10/22/24, at 17 (stating that Snow Management "remains indebted" to B&M for the work it performed on Snow Management's behalf). In other words, the court implicitly found that Snow Management breached the SPC not by paying late, but by failing to pay at all. Since B&M proffered evidence sufficient to support the court's determination, we reject as unpersuasive Snow Management's semantic argument.

In its second claim attacking the court's monetary award to B&M, Snow Management offers an alternative contention that the trial court had no basis to give damages pursuant to B&M's unjust enrichment count. This is because

the trial court specifically found the existence of a contract, which is antithetical to a theory of unjust enrichment. **See** Snow Management's brief at 16-17. We dispose of this argument because, as already established, the court did not err in awarding damages based upon B&M's breach of contract claim. The judgment in B&M's favor was not based on an unjust enrichment theory. No relief is due.

### **Breach of Non-Compete Agreement - TJ Maxx**

Snow Management's next four claims relate to the snow removal and landscaping contract B&M executed with TJ Maxx in the fall of 2017. Snow Management levels multiple charges of error, including, *inter alia*, the court's failure to find that the Non-Compete Agreement governed landscaping and contracting work and that it erred against the weight of the evidence in finding that Snow Management did not adequately establish damages. As we find it dispositive, we consider the court's conclusion that Snow Management failed to prove damages and Snow Management's associated weight claim, as opposed to whether B&M breached the Non-Compete Agreement.

This Court has recently held:

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of

- 11 -

the evidence and that a new trial should be granted in the interest of justice.

If there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the factfinder could have decided in favor of either party.

*Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 711 (Pa.Super. 2024) (cleaned up).

Our High Court has recounted the following with respect to damages arising from a breach of a restrictive covenant:

[U]nless the contract itself expressly limits recoverable damages to those incurred during the non-compete period, a party harmed by the breach of a non-compete should be afforded the opportunity to seek and prove the ordinary, foreseeable, and **certain** damages that flow from the breach. This may include future lost profits extending beyond the non-compete period.

*Vinculum, Inc.*, 310 A.3d at 250 (emphasis added). Furthermore, while "restrictive covenants are important business tools to prevent the theft of customers and unfair competition, . . . it is equally manifest that the law does not permit a damages award to be based on mere guesswork or speculation." *Id*. at 254 (cleaned up).

We have likewise identified that a plaintiff "cannot recover . . . without establishing a basis for an inference of fact that he has been actually damaged." *Scobell v. Schade*, 688 A.2d 715, 719 (Pa.Super. 1997) (citation omitted). "A mere possibility that [he] might have made a profit if the defendant had kept his contract will not justify damages based on the

- 12 -

assumption that the profit would have been made." ***Id***. Instead, a "party seeking damages for breach of contract must be able to prove such damages with reasonable certainty." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa.Super. 2016) (citation omitted). Otherwise, such damages are unrecoverable. ***Id***. Finally, as our High Court has recognized: "As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." ***Spang & Co. v. U.S. Steel Corp.***, 545 A.2d 861, 866 (Pa. 1988) (citation omitted).

Snow Management's claims are premised upon B&M's breach of the Non-Compete Agreement, which states as follows:

Addendum A.

Non-solicitation & non-competition. Subcontractor hereby agrees that during the term hereof, and for two (2) years after the expiration or earlier cancellation of this Agreement for any reason, or any extension or renewal of this Agreement, the following provision will be complied with:

1. Subcontractor shall not, whether directly or indirectly, for his own benefit or for the benefit of any other person, firm or business organization . . . solicit, directly or indirectly, or otherwise, for the purpose of transacting business, any snow plowing client of Contractor, or induce any snow plowing client of Contractor to terminate such association with Contractor for purposes of becoming a snow plowing client and/or associated elsewhere, or otherwise attempt to provide services to any snow plowing client of Contractor which competes with Contractor[']s snow plowing business. Subcontractor shall prevent such solicitation to the extent he has authority to prevent same and shall otherwise not interfere with the relationship between Contractor and its snow plowing clients.

2.  For purposes of this Agreement "client" shall mean:

    (a)    Any person or entity who was a snow plowing client of contractor at any time during the one (1) year period prior to the date of any termination of or cancellation of this Agreement[.]

Trial Exhibit P2 (Addendum A to SPC).   Critically, the provision does not provide a method of calculating damages in the event of a breach.

As recounted above, the court readily found that B&M breached the Non-Compete Agreement insofar as it entered into a contract to provide snow removal-related services to TJ Maxx.[3]  **See** Trial Court Opinion, 10/22/24, at 23.   Concerning damages, in its Rule 1925(a) opinion, the court stated that "[d]espite Snow Management's contention, the record is entirely devoid of anything, other than pure speculation, to indicate that B&M caused the Snow Management/TJ Maxx contract to not be renewed."   **Id**. at 24 (some capitalization altered).  In addition to finding that Snow Management provided incredible testimony as to the value of lost profits and further failed to distinguish damages relating to snow removal and landscaping services, it specifically determined that "there was not sufficient evidence to [deduce] that, but for B&M's breach, Snow Management would have had the successful bid for the TJ Maxx contract.  Therefore, [Snow Management] did not prove

_____

[3] It found to the contrary that there was no breach to the extent that B&M sought and performed landscaping services, concluding that was outside the scope of the Non-Compete Agreement.  Since we resolve this matter based on Snow Management's failure to prove damages, our conclusion would be the same assuming *arguendo* that the court did err in so finding.

lost profits by a preponderance of the evidence and damages cannot be awarded." Amended Finding of Fact and Conclusions of Law, 7/12/24, at 17.

Similarly, in arguing for affirmance, B&M notes that despite Snow Management subjecting four different TJ Maxx employees to depositions, "not a single . . . employee testified [that Snow Management] would have been awarded the [TJ Maxx] snowplow contract." B&M's brief at 34. It continues: "Specifically, [Snow Management] deposed Kevin McDermott and Andrew Pilkington[,] who had decision making and signatory authority[,] and neither testified, insinuated[,] or inferred in any way that [Snow Management] would have been awarded the contract with TJ Maxx." *Id*. B&M criticizes Snow Management for failing to ask any witnesses questions relating to bid submissions from companies other than B&M and Snow Management, despite evidence that TJ Maxx solicited between four and six bids total. *Id*. at 34-35. B&M additionally maintains that to the extent that Snow Management relies upon the trial testimony of its president, Patrick Kane, that he was allegedly told he "received the contract" before it was later awarded to B&M, this was belied by the depositions of all TJ Maxx employees. Hence, the court was free to disregard Mr. Kane's assertions as incredible. *Id*. at 35-36.

Snow Management argues that "contrary to the trial court's reasoning, the record supports the fact that B&M's actions caused Snow Management not to receive the snow plowing and landscaping contract" with TJ Maxx. *See* Snow Management's brief at 36. It highlights Mr. Kane's testimony that he was unaware that any companies besides Snow Management and B&M

submitted bids for the contract in question. *Id*. Snow Management also notes that in the deposition of Mr. McDermott, he stated that he believed Snow Management's bid to be "competitive." *Id*. at 37. It argues that because there was some allusion within Mr. McDermott's testimony that he was asked by his superior to "re-evaluate" the bids after a discussion between TJ Maxx and B&M, there was evidence of "intervening and proximate cause preventing an award to Snow Management." *Id*. Snow Management therefore laments the court's finding that "there [was] no testimony or evidence" that B&M interfered with Snow Management being awarded the contract. *Id*. at 38.

After our thorough review of the record, we find that the trial court did not err in determining that Snow Management failed to prove its case for damages. We find our decision in *Scobell* especially apt. There, Scobell Inc. ("Scobell") sued a former employee for breach of a non-competition agreement. Specifically, the former employer left Scobell, joined another company called A.W. Farrell Company ("Farrell"), and established sheet metal capabilities there that allowed Farrell to compete with Scobell on various projects in and around Erie County. The trial court found the defendant to be in breach of the restrictive covenant by aiding Farrell in bidding on projects and awarded damages. The court additionally concluded that Scobell proved damages with respect to a particular contract awarded to Farrell by a hospital, despite a dearth of evidence from Scobell that it was the next lowest bidder after Farrell.

On appeal, this Court reversed as to that specific award. Pertinent here, we identified the correct standard of review concerning the competitive bid for the hospital, stating:

> [T]he proper measure of damages, as determined by the trial court, is to ascertain what contracts Farrell won because Mr. Schade worked for them and competed against Scobell. . . . **The next step then, assuming that Farrell was [previously] unable to compete, is to determine which jobs Scobell would have received as lowest bidder**. Scobell has the burden of proving those damages with reasonable certainty.

*Id*. at 423 (emphasis added). As part of the decision, we rejected Scobell's argument that Pennsylvania courts have permitted the award of damages for breach of non-compete provisions without additional evidence of lost profits, noting that those decisions were based on a specific value placed upon the covenant by the parties. *Id*. at 422. The Court noted that, unlike in the cases relied upon by Scobell, "the parties did not assign a specific value for the covenant in their contract. As Scobell drafted the contract executed by the parties, it cannot be heard to complain now that it must bear the burden of proving lost profits with reasonable certainty." *Id*. We thus modified the trial court's award of damages.

The rationale set forth in *Scobell* applies here. Snow Management, as drafter of the Non-Compete Agreement, did not set forth any monetary value in the event of its breach. Therefore, it had the burden of proving damages with reasonable certainty, including that it was the next lowest bidder for the TJ Maxx contract after B&M.

- 17 -

Despite Snow Management having had the full opportunity to present its evidence of damages, it failed to persuade the court that it was entitled to any arising from B&M's breach. Snow Management did not establish by a preponderance of the evidence, among other things, that its bid was the next most competitive one for that contract after B&M's. *See Scobell Inc*, 688 A.2d at 720-21 (noting that although there was testimony as to Scobell's bid on a project, the witness "did not know the amount of the bid submitted or whether or not Scobell's bid was second lowest to Mr. Schade's bid on behalf of Farrell"). Stated another way, based on the evidence admitted at trial, it was within the court's discretion to weigh the competing evidence to ultimately conclude that there was insufficient proof that Snow Management would have been awarded the new TJ Maxx contract but for B&M's actions.

Indeed, as B&M notes, Snow Management did not elicit **any** material evidence of how its bid compared to the other companies that so submitted, or any information concerning those other bids at all. It instead set forth its generalized evidence from Mr. Kane in the hopes that the court would find it credible over the deposition testimony of the TJ Maxx employees, to the extent they were inconsistent. Therefore, Snow Management's claim that the court's finding was against the weight of the evidence fails even if B&M breached the Non-Compete Agreement. *See Feldman*, 325 A.3d at 711 ("If there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm.")

**Breach of Non-Compete Agreement - Sears**

Snow Management's remaining issues concern the business relationship B&M developed with Sears in the winter of 2017. More particularly, Snow Management contends that the trial court incorrectly found that B&M did not breach the Non-Compete Agreement; the court ruled contrary to the weight of the evidence by concluding that Snow Management would not have been awarded a future contract with Sears; and the court was mistaken in determining that Snow Management did not adequately prove damages, both lost profits and future loss of profits, in the event of a breach. *See*, *e.g.*, Snow Management's brief at 4-5. We once more find dispositive the court's determination that Snow Management failed to meet its burden in proving damages.

As previously discussed, the trial court found in its amended conclusions of law that there was no testimony that B&M was responsible for the termination of the contract between Sears and Snow Management, and likewise that if B&M "had not entered into a contract with [Sears, Snow Management] still would not have had the contract" because Snow Management had been "fired from the job."[4] Amended Findings of Fact and Conclusions of Law, 7/12/24, 18-19.

---

[4] For its part, B&M succinctly argues that since Snow Management's agreement was terminated by Sears, there was no evidence that B&M was the proximate cause of loss of profits for Snow Management. *See* B&M's brief at 22.

Snow Management claims, on the other hand, that the evidence from trial "ties B&M's violation of the [Non-Compete Agreement] to Snow Management's loss of [its] contract with Sears." Snow Management's brief at 25. It highlights certain evidence that allegedly would support that conclusion, including that Peter Caparro, a former TJ Maxx employee who was familiar with B&M's work, joined Sears before it terminated the contract with Snow Management. *Id*. at 25-26. Snow Management notes that Mr. Caparro's name appears in the contract that B&M executed with Sears.[5] *Id*. at 26. It argues accordingly that the "loss of its snow plowing contract at Sears was made possible because of B&M's willingness to violate" the Non-Compete Agreement. *Id*.

We cannot conclude that the trial court abused its discretion in refusing to grant Snow Management a new trial based upon the weight of the evidence. The testimony established that Sears ended its contract with Snow Management in January 2017, and then solicited a bid from B&M approximately one month later. There was no testimony from Mr. Caparro or any Sears representative to support Snow Management's position that Mr. Caparro impacted Sears's decision to terminate Snow Management's contract. Likewise, the record does not contain evidence that Snow Management submitted a new bid with Sears after the termination. As such, Snow

---

[5] Mr. Caparro did not testify at trial, and the record does not indicate that he was deposed.

management proffered no basis beyond speculation to find that it would have realized profits from Sears had B&M adhered to the Non-Compete Agreement.

Thus, assuming without deciding that B&M did breach the Non-Compete Agreement, the trial court's finding that Snow Management was unsuccessful in demonstrating actual harm or loss arising from such breach is supported by the record. **See Vinculum, Inc.**, 310 A.3d at 254 (stating that "the law does not permit a damages award to be based on mere guesswork or speculation"). Based on the evidence presented, any damages as to the Sears relationship "were highly speculative, if not nonexistent." **Id**.; **see also Scobell Inc.**, 688 A.2d at 719 ("Hence, there can be no competition if [the plaintiff] did not submit a bid, and damages should not be awarded on contracts [the defendant] received [in violation of a non-compete agreement] . . . for which [the plaintiff] did not bid."). Hence, Snow Management has not established a right to a new trial on this matter.

In sum, we conclude that the trial court did not err in awarding damages to B&M based on Snow Management's failure to pay certain invoices for work performed. Additionally, Snow Management has not convinced us that the court erred in refusing to grant a new trial based upon the weight of the evidence because the certified record supports its findings that the company failed to adequately prove damages for any breach by B&M of the Non-Compete Agreement. Accordingly, we have no cause to disturb the judgment below and affirm the court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/14/2025