J-A11019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: DILLE FAMILY TRUST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: LORRAINE DILLE | : | |
| WILLIAMS AND ROBERT NICHOLS | : | |
| FLINT DILLE | : | |
| | : | |
| | : | |
| | : | No. 853 WDA 2021 |

Appeal from the Order Entered July 8, 2021
In the Court of Common Pleas of Lawrence County Orphans' Court at
No(s):  No. 43 of 2019 O.C.

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  August 18, 2023**

Lorraine Dille Williams ("Lorraine") and Robert Nichols Flint Dille ("Robert") (collectively "Appellants" or "Beneficiaries") appeal from the order entered in the Court of Common Pleas of Lawrence County Orphans' Court on July 8, 2021, directing them to pay attorneys' fees and costs totaling $85,883.00, incurred by Appellees, Louise A. Geer ("Ms. Geer"), the Nowlan Family Trust ("NFT"), and the Buck Rogers Company ("BRC"), as a result of the orphans' court's finding Appellants in contempt for violating three of its prior court orders.  After careful review, we affirm.

This matter has a complex history and stems from a dispute over the situs of the Dille Family Trust ("DFT" or "Trust") and whether Ms. Geer is the legitimate Trustee of the DFT.  We glean the following facts and procedural

---

[*] Retired Senior Judge assigned to the Superior Court.

background relevant to this appeal from the record. The DFT was created by Robert C. Dille ("Mr. Dille") and Virginia N. Dille ("Mrs. Dille") (collectively "Settlors") on August 16, 1979, in the state of California, and amended on January 5, 1982. Settlors were the original Trustees of the DFT. Their children, Lorraine and Robert, are the Trust's sole beneficiaries. Upon the death of Mr. Dille on March 30, 1983, Arthur Martin became a Co-Trustee with Mrs. Dille. On February 1, 1989, the Beneficiaries and the Co-Trustees executed a document transferring the situs of the DFT to Illinois. Upon Mrs. Dille's death in February of 2009, Mr. Martin became the sole Trustee.

On March 8, 2011, Mr. Martin resigned from his position as Trustee and, pursuant to the terms of the DFT, Dennis Fox was to be appointed as the successor Trustee. Mr. Fox, however, never acted in his capacity as Trustee of the DFT and submitted his resignation from the position on May 4, 2011. American Guarantee & Trust Company (n/k/a RBC Trust Company) was the last-named successor Trustee listed in the terms of the DFT; however, it declined to accept the position, leaving the Trust without any named successor.

Appellants then asked Ms. Geer, an attorney, to become the Trustee, and she accepted the appointment on June 6, 2011. Immediately following her appointment, Ms. Geer began acting as the Trustee of the DFT with the permission and consent of Appellants. She began administering the Trust from the office of Geer and Herman, P.C., located in Lawrence County, Pennsylvania. Pennsylvania income tax returns were filed on behalf of the

DFT by Ms. Geer for the years 2011 through 2016, a Trust bank account was opened in Pennsylvania, and Ms. Geer conducted all DFT business from her office in Lawrence County, Pennsylvania.

A dispute arose between the DFT and the NFT over the ownership of the United States trademark and related rights to Buck Rogers.[1] Litigation ensued before the United States Patent and Trademark Office, the Patent and Trademark Appeals Board, and the federal district court in the Eastern District of Pennsylvania. Meanwhile, on November 28, 2017, Ms. Geer – purporting to act as Trustee – filed for Chapter 11 bankruptcy on behalf of the DFT. Ms. Geer did not seek the permission of Appellants prior to the bankruptcy filing, nor did she notify them after the filing. On August 26, 2018, after learning of the Chapter 11 filing from the Bankruptcy Court, Appellants sent written notice to Ms. Geer, informing her that she was no longer representing the DFT as Trustee. Despite receiving the August 26, 2018 notice, Ms. Geer continued to act and hold herself out as Trustee of the DFT.

During the bankruptcy action, Ms. Geer and her husband, Daniel Herman, acting as individuals, together with the NFT submitted a joint offer

_____

[1] By way of background, the fictional character known as the 25th Century space explorer, Buck Rogers, was created by John F. Dille in 1928. In approximately 1928-1929, John F. Dille contracted with Phillip Francis Nowlan to create the Buck Rogers comic strip. On May 14, 1942, Mr. Nowlan, through his estate, assigned all intellectual property rights to Buck Rogers to John F. Dille. These rights ultimately became the property of the DFT. In 1981, the DFT registered Buck Rogers as a trademark with the United States Trademark Office. However, as a result of its failure to properly renew its trademark, the DFT's United States trademark for Buck Rogers expired on June 6, 2011, and the NFT subsequently attempted to acquire the trademark rights.

to the Bankruptcy Court to purchase all of the DFT assets, including any trademark and intellectual rights that the DFT might own with regard to Buck Rogers. Their offer was rejected. On February 20, 2019, the bankruptcy action was dismissed on the grounds that the DFT was not a business trust and therefore was not eligible for Chapter 11 relief.

Shortly after the bankruptcy dismissal, the DFT and the NFT resolved their dispute. On February 28, 2019, Ms. Geer, acting as Trustee of the DFT, signed a settlement agreement with the NFT. Pursuant to the terms of the settlement agreement, Ms. Geer entered into an asset purchase agreement, conveying any and all trademark and intellectual property rights owned by the DFT to the BRC for $300,000.00. As a result of this transaction, the federal action between the NFT and the DFT was voluntarily dismissed.

On April 17, 2019, Ms. Geer, acting as Trustee of the DFT, instituted the underlying action with the filing of a petition in the Court of Common Pleas of Lawrence County, Pennsylvania, Orphans' Court Division, seeking confirmation of her status as the Trustee of the DFT and seeking approval of her proposed distribution of the Trust assets. Appellants opposed the petition, claiming that Ms. Geer had never been lawfully appointed as Trustee. The NFT and the BRC (collectively "Intervenors") filed a petition seeking to intervene in the orphans' court action, which the court granted on February 24, 2020, for the limited purpose of participating in the hearings to determine whether Ms. Geer is the legally authorized Trustee of the DFT. A bifurcated trial on the issue of Ms. Geer's status as Trustee, originally scheduled to be

- 4 -

held in April 2020, was continued multiple times due to COVID-19 concerns and discovery issues, and was eventually held on April 22 and 23, 2021.[2] Following the trial, the orphans' court ultimately entered an amended order on January 10, 2022, finding that Ms. Geer was lawfully appointed under Illinois law as the Trustee of the DFT on June 6, 2011, and that the Beneficiaries' August 26, 2018 writing purporting to remove Ms. Geer from her position as Trustee was ineffective.[3]

While the trial regarding Ms. Geer's status as Trustee was still pending, she filed a motion seeking to have Appellants held in contempt of court for their purported violation of certain court orders. Following an evidentiary hearing on the motion for contempt, the orphans' court found Appellants in contempt and issued an order containing the following additional findings of fact and conclusions of law:

### **Findings of Fact**

1. On January 7, 2021[,] Louise Geer filed a motion to hold the Beneficiaries in contempt of this court's orders of December 6, 2019, October 1, 2020, and October 8, 2020.

2. On December 6, 2019, the Beneficiaries filed a motion for an injunction against all parties prohibiting the transfer, disbursement, distribution[,] or encumbrance of any asset of the [DFT]. This court signed an order on December 6, 2019, as proposed by the Beneficiaries, that, "until further order of

---

[2] The issue regarding approval of Ms. Geer's proposed distribution of the Trust assets was scheduled for a separate trial date and is not relevant to this appeal.

[3] Appellants filed a separate appeal from this order at docket no. 96 WDA 2022, which is currently pending before this Court.

court, there is to be no disbursement, distribution[,] or encumbrance of any asset of the [DFT]."

3. On October 1, 2020, this court issued an order setting the hearing on the status of [Ms.] Geer as Trustee for the [DFT] for December 7 and December 8, 2020. The order also ordered that[] the December 6, 2019 order remained in full force and effect[,] and that any violation of that order would subject the violator to contempt of court sanctions.

4. On October 8, 2020, this court issued an order stating as follows:

   "This court has determined that it has subject matter jurisdiction to decide the status of [Ms.] Geer as Trustee of the [DFT]." And further that, "…this court has exclusive jurisdiction to decide whether or not [Ms.] Geer was appointed Trustee of the [DFT] and whether or not [Ms.] Geer continues to be the lawful Trustee of the [DFT]. All parties will be bound by this court's decision."

5. The Beneficiaries attempted to obtain summary judgment or partial summary judgment based on the pleadings, and an order that [Ms.] Geer was not properly appointed Trustee of the [DFT] in June of 2011 and in the alternative, if she was lawfully appointed, that she ceased being Trustee of the [DFT] as of February 20, 2019. On October 2, 2020, this court denied motions for summary judgment presented by the Beneficiaries and by [Ms.] Geer on the question of whether or not [Ms.] Geer was lawfully appointed as Trustee of the [DFT] and whether she remained Trustee of the [DFT]. This court found that it had subject matter jurisdiction and that genuine issues of material fact exist surrounding the appointment and alleged removal of [Ms.] Geer as Trustee of the [DFT].

6. While the case was still pending before the Court of Common Pleas of Lawrence County, the Beneficiaries filed an *ex parte* petition in the Superior Court of the State of California for the County of Los Angeles on April 5, 2019[,] seeking (1) confirmation that [Ms.] Geer was not properly appointed as Trustee of the [DFT]; (2) confirming that the Beneficiaries removed the Trust assets [on] February 20, 2019; (3) appointing [Beneficiaries] as Co-Trustees of the [DFT]; (4) and to compel [Ms.] Geer to immediately surrender all Trust property and records to [Beneficiaries].

- 6 -

7. On July 11, 2019, Judge Clifford Klein, in the Superior Court of California for the County of Los Angeles, issued an order as follows:

   a. "The … Superior Court of California County of Los Angeles[] finds it lacks jurisdiction to consider the petition (of the Beneficiaries). Trustee Louise Geer is not properly subject to the jurisdiction of a California Court."

   b. "The … Beneficiaries[] … sought out respondent Geer and both of them asked her to serve as Trustee."

   c. "[S]ince June 2011, Ms. Geer has been acting as Trustee."

   d. That the Superior Court had no jurisdiction over the [DFT], which had been administered in the Commonwealth of Pennsylvania since June 2011, or over [Ms.] Geer as Trustee.

   e. The Beneficiaries' petition was dismissed with prejudice.

8. Pursuant to the petition of the Beneficiaries, on October 23, 2020, this court issued an order directing the law firm of Kloss, Stenger and LoTempio to deposit $300,000.00 that it was holding in its escrow account for the [DFT] into the Lawrence County Court's Trustee account. The $300,000.00 was deposited with the courts of Lawrence County and remains in the court's escrow account.

9. On October 29, 2020, the Beneficiaries petitioned the Superior Court of California for the County of San Mateo seeking a court order (1) approving the Trustee's distribution of "all Trust assets" to the Beneficiaries, retroactive to February 20, 2019; (2) approving the termination of the [DFT]; (3) waiving any accounting for the administration of the [DFT] and its assets; [and] (4) approving of all of the activities of the Trustee in administering the Trust.

10. The motion in the County of San Mateo claimed that [Mr.] Fox was the Trustee for the [DFT] and that there were no other interested parties other than Beneficiaries and the Trustee, [Mr.] Fox.

11. The Beneficiaries' petition in the County of San Mateo made the following assertions, under penalty of perjury and signed by both Beneficiaries:

a. That following [Mrs.] Dille's death[] and the resignation of [Mr.] Martin, [Mr.] Fox became the sole successor Trustee in 2011;

b. That all of the Trust assets were distributed to the Beneficiaries on or around February 20, 2019;

c. That on February 20, 2019, the Beneficiaries received all of the assets of the Trust;

d. That as of February 20, 2019, the Trust had been terminated.

12. The petition in the County of San Mateo made no mention of the Lawrence County action that was pending or the hearing that was scheduled for December 7 and 8, 2020.

13. The petition in the County of San Mateo made no mention of the order of Judge Clifford Klein in the County of Los Angeles that dismissed the Beneficiaries' earlier petition with prejudice, because California did not have jurisdiction over [Ms.] Geer or over the [DFT].

14. The petition in San Mateo County made no mention of the fact that the Beneficiaries had requested the Court of Common Pleas of Lawrence County to order the deposit of $300,000.00 from an escrow account where it was being held for the benefit of the [DFT]. Nor did the petition mention that the $300,000.00 was being held by the Court of Common Pleas of Lawrence County in its escrow account.

15. The petition in San Mateo County was presented *ex parte* and admittedly without notice [to Ms.] Geer or her counsel, to the [NFT], or its counsel, or the Court of Common Pleas of Lawrence County, where the trial on the issue of whether … [Ms.] Geer is the lawful Trustee of the [DFT] was pending.

16. Lorraine Dille Williams testified that the Beneficiaries filed the *ex parte* motion in San Mateo County to obtain an order confirming the transfer of all Trust assets to [them].

17. Robert Nichols Flint Dille in his deposition of November 18, 2020, stated that he believed the Trust owned certain intellectual property rights and that the petition in San Mateo was presented to secure the distribution to he [*sic*] and his sister of all of the assets of the Trust and to stop all the "sneaky" business going on in Pennsylvania.

18. In support of the Beneficiaries' petition in San Mateo County, both Robert … and Lorraine … signed a verification under penalty of perjury that they[] "have the unfettered right to remove their respective 50% shares of the assets (of the [DFT]) … at any time…[,]" since they were both thirty-five (35) years of age. The notarized statement under penalty of perjury was signed by both Beneficiaries on October 7, 2020.

19. Lorraine … testified that the intellectual rights owned by the [DFT] were transferred to she [*sic*] and her brother on February 20, 2019[,] and that she and her brother immediately sold those intellectual rights to 26th Century Ventures, Inc.[,] [(26th Century")] in exchange for significant stock in 26th Century…. For the purposes of this contempt hearing, this court does not find the testimony of Lorraine … credible for the following reasons:

    a. Evidence presented showed that 26th Century … did not come into existence until May 2, 2019.

    b. Lorraine … testified that there was a written document transferring the intellectual rights owned by the Trust. However, she did not produce any such document in the extensive discovery that had taken place in this case and could not produce any such document at the time of the hearing (although she claimed she did have a copy somewhere).

    c. Lorraine … and Robert … had notice of the December 6, 2019, October 1, 2020, and October 8, 2020 orders of court.

### Conclusions of Law

20. The Beneficiaries' filing of the motion in the Superior Court of California, County of San Mateo on October 29, 2020[,] was done intentionally and with the intent of effecting the transfer of assets of the [DFT] to the Beneficiaries. And that those assets had value, in as much as the Beneficiaries were able to sell those assets to 26th Century … in exchange for stock in 26th Century….

21. That the petition that was presented in the County of San Mateo was done surreptitiously, without notice to persons or entities that were interested parties.

22. That the petition omitted materially relevant facts including the fact that an action to determine the legal status of the Trustee of the [DFT] and for an accounting of the administration of the Trust and assets was pending in Lawrence County, Pennsylvania[,] and that $300,000.00 was being held (at the request of the Beneficiaries) in an escrow account as claimed assets of the [DFT].

23. That the filing of the petition in the County of San Mateo intentionally omitted the fact that a previous filing by the Beneficiaries in the County of Los Angeles had resulted in a finding by Judge Klein that the State of California had no jurisdiction to determine matters concerning either [Ms.] Geer's status as Trustee of the [DFT] or over the [DFT].

24. That the aforementioned omissions [and] lack of notice to interested parties[] were done intentionally to effect a transfer and the encumbrance of assets of the [DFT] to the Beneficiaries in direct violation of the December 6, 2019, October 1, 2020[,] and October 8, 2020 orders of this court.

25. That the aforesaid actions of [the Beneficiaries] encumbered and diminished the value of the assets of the [DFT] (the assets being the claim to ownership to certain intellectual property rights related to []Buck Rogers.[]).

26. For the reasons stated above, this court finds that [the Beneficiaries] intentionally and volitionally violated the aforesaid court orders and are hereby held in contempt of court.

Orphans' Court Opinion & Order (OCOO), 3/12/21, at 1-7 (unnecessary capitalization and emphasis omitted). Based on the foregoing, the orphans' court issued the following order:

1. [The Beneficiaries] are ordered to pay all costs and attorney[s'] fees incurred by [Ms.] Geer, or any entity insuring or representing [Ms.] Geer as a result of the Beneficiaries' filing of the aforesaid action in the Superior Court of California for the County of San Mateo, including but not limited to the costs and attorney[s'] fees incurred in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo

County. The costs and fees will be determined in a separate hearing.

2. [The Beneficiaries] are ordered to pay all costs and attorney[s'] fees incurred by the [DFT], or any entity insuring or representing the [DFT,] as a result of the Beneficiaries' filing of the aforesaid action in the Superior Court of California for the County of San Mateo, including but not limited to the costs and attorney[s'] fees incurred in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo County. The costs and fees will be determined in a separate hearing.

3. [The Beneficiaries] are ordered to pay all costs and attorney[s'] fees incurred by the [NFT], or any entity representing the [NFT,] as a result of the Beneficiaries' filing of the aforesaid action in the Superior Court of California for the County of San Mateo, including but not limited to the costs and attorney[s'] fees incurred in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo County. The costs and fees will be determined in a separate hearing.

4. [The Beneficiaries] are ordered to give Attorney Henry Sneath and Attorney Frank Verterano[4] at least twenty (20) days prior written notice of any proposed, planned[,] or contemplated action or filing on behalf of [the Beneficiaries,] Dennis Fox[,] or any person or entity representing any of them with regard to any filing or action dealing in any way with Louise Geer, the [DFT], or any asset (including any intellectual property) now or formerly held as property of the [NFT] (this specifically includes, but is not limited to, any intellectual property right to the name "Buck Rogers").

5. [The Beneficiaries] are enjoined from transferring, assigning, or in any way encumbering[] any intellectual property rights now or formerly owned by the [DFT] or related to the name "Buck Rogers," without further order of this court. If either [of the Beneficiaries] becomes aware that any person or entity plans, proposes to, or is contemplating any

_____

[4] Henry Sneath, Esquire, an attorney with the law firm, Houston Harbaugh, P.C., represents the DFT and Ms. Geer, as Trustee, in this matter. Frank Verterano, Esquire, is counsel for the NFT.

- 11 -

assignment, transfer[,] or use of any intellectual property rights now or formerly owned by the [DFT] or related to the name "Buck Rogers," they must notify Attorney Sneath and Attorney Verterano in writing within twenty-four (24) hours of learning of the information.

6. [The Beneficiaries] are to within seven (7) days of the date of this order, provide a copy of this order to 26th Century … and to [any] entity or person to whom any intellectual property now or formerly held by the [DFT] or any intellectual property right to the name "Buck Rogers" has been transferred at any time after February 19, 2019; and to serve Attorney Frank Verterano and Attorney Henry Sneath with a copy of any such notice (including a full list of each name and address and a copy of each cover letter) within three (3) days of the serving of the notice upon the person or entity.

7. A hearing to determine the amount of costs and attorney[s'] fees is scheduled for the 29th day of March, 2021…. Attorney Sneath and Attorney Verterano are to furnish a detailed listing of all fees and costs that have been incurred and which are due and payable under this order to Attorney Robleto[5] at least ten (10) days prior to the hearing….

*Id.* at 7-9 (unnecessary capitalization omitted).

Following the reception of testimony and evidence concerning the award of attorneys' fees pursuant to its March 12, 2021 order, the orphans' court issued an additional order, which stated the following:

1. The reasonable attorney[s'] fees incurred by the [NFT], an intervenor in the above[-]captioned matter, as a result of the Beneficiaries['] filing of the aforementioned action in the Superior Court of California for the County of San Mateo, in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo County is the sum of $31,858.50.

2. [The Beneficiaries] are ordered to pay within thirty (30) days the sum of $31,858.50 to the law firm of Verterano and Manolis. The law firm of Verterano and Manolis is to credit

_____

[5] Aurelius Robleto, Esquire, is counsel of record for Appellants.

> or refund the [NFT] for the costs and attorney[s'] fees awarded.
>
> 3. The reasonable attorney[s'] fees incurred by Houston Harbaugh, P.C., in the above[-]captioned matter, as a result of the Beneficiaries['] filing of the aforementioned action in the Superior Court of California for the County of San Mateo, in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo County is the sum of $43,904.50.
>
> 4. [The Beneficiaries] are ordered to pay within thirty (30) days the sum of $43,904 to the law firm of Houston Harbaugh, P.C. Houston Harbaugh, P.C. is to credit or reimburse CNA Insurance Company and Louise Geer in proportion to their payments of costs and attorney[s'] fees.
>
> 5. The reasonable attorney[s'] fees incurred by Klinedinst, P.C.[6] in the above[-]captioned matter, as a result of the Beneficiaries['] filing of the aforementioned action in the Superior Court of California for the County of San Mateo, in preparing, presenting[,] and litigating the contempt petition and contesting the aforementioned court order in San Mateo County is the sum of $10,120.00.
>
> [6.] [The Beneficiaries] are ordered to pay within thirty (30) days the sum of $10,120.00 to the Klinedinst, P.C. is [*sic*] to credit or reimburse CNA Insurance Company for their payments of costs and attorney[s'] fees….

Orphans' Court Order (OCO), 7/8/21, at 1-2 (unnecessary capitalization omitted).

Appellants filed a timely notice of appeal on July 26, 2021, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 29, 2021, the orphans' court issued an order in compliance with Rule 1925(a), stating that the reasons for its

---

[6] The law firm of Klinedinst, P.C. represented Ms. Geer and the NFT in the San Mateo, California action.

decision already appear of record and are contained in its March 12, 2021 and July 8, 2021 orders.

On appeal, Appellants present the following issues for our review:

1. Whether the [orphans'] court erred or abused its discretion by failing to apply the appropriate standard for civil contempt.

2. Whether the [orphans'] court erred or abused its discretion by failing to strictly construe the orders forming the basis of the allegations of civil contempt in favor of the Beneficiaries and failing to resolve any ambiguities or omissions in the order or orders in favor of the Beneficiaries.

3. Whether the [orphans'] court erred or abused its discretion since the order or orders forming the basis of the allegations of civil contempt were too vague and/or could not be enforced.

4. Whether the [orphans'] court erred or abused its discretion by failing to conduct any inquiry into the Beneficiaries' ability to pay attorneys' fees.

5. Whether the [orphans'] court erred or abused its discretion by failing to provide any opportunity for the Beneficiaries to purge themselves of their alleged civil contempt before entering sanctions against them.

6. Whether the [orphans'] court erred or abused its discretion by entering sanctions that were punitive in nature, rather than coercive.

7. Whether the [orphans'] court erred or abused its discretion by awarding attorneys' fees for legal services that had not yet been performed.

8. Whether the [orphans'] court erred or abused its discretion by awarding attorneys' fees for legal services performed, or to be performed, in certain legal proceedings then pending in California.

9. Whether the [orphans'] court erred or abused its discretion by granting attorneys' fees to Intervenors, the [NFT] and/or the [BRC], neither of which joined the contempt motion nor filed a motion for contempt.

10. Whether the [orphans'] court erred or abused its discretion by granting attorneys' fees to the [DFT], which entity did not join the contempt motion nor file any motion for contempt, and which exists for the benefit of the Beneficiaries.

11. Whether the [orphans'] court erred or abused its discretion by requiring the Beneficiaries to provide at least 20 days' prior notice of any proposed, planned, or contemplated action or filing on behalf of the Beneficiaries "or [Mr.] Fox or any person or entity representing them with regard to any filing or action dealing in any way with [Ms.] Geer, the [DFT], or any asset (including intellectual property) now or formerly held as property of the [NFT] (specifically including, but not limited to, any intellectual property right to the name 'Buck Rogers')."

12. Whether the [orphans'] court erred or abused its discretion by requiring the Beneficiaries to notify the attorneys for [Ms.] Geer and the Intervenors, in writing, within 24 hours of the Beneficiaries becoming aware that any person or entity plans, proposes to, or is contemplating any assignment, transfer, or use of any intellectual property rights now or formerly owned by the [DFT] or related to the name "Buck Rogers."

13. Whether the [orphans'] court erred or abused its discretion by determining that Lorraine['s] … testimony had not been credible.

14. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had "intentionally and volitionally violated" the order or orders forming the basis of the allegations of civil contempt.

15. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had violated order(s) of the [orphans'] court by encumbering and/or diminishing the value of DFT's intellectual property assets, when none of the parties had contended that the DFT held a claim to the intellectual property assets by April 17, 2019, when [Ms.] Geer commenced the action in the [orphans'] court.

16. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had violated order(s) of the [orphans'] court by (i) encumbering or diminishing the value of DFT intellectual property assets; or (ii) intentionally attempting to effect a transfer and encumbrance of DFT

intellectual property assets, considering that no party had contended that the DFT held a claim to the intellectual property assets by April 17, 2019, when [Ms.] Geer commenced the action in the [orphans'] court.

17. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had violated order(s) of the trial court by filing a petition in California, seeking confirmation of a transfer of the DFT's assets to its Beneficiaries on February 20, 2019 (*i.e.*, a date **prior** to [Ms.] Geer's commencement of the action in the [orphans'] court).

18. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had violated its order(s) when the [orphans'] court had expressly determined that it did not have authority to enjoin the Beneficiaries from filing matters in other courts.

19. Whether the [orphans'] court erred or abused its discretion by finding an action then pending in California impinged upon the [orphans'] court's "exclusive jurisdiction to decide whether or not [Ms.] Geer was appointed Trustee of the [DFT] and whether or not [Ms.] Geer continues to be the lawful [T]rustee of [the DFT]," considering that the [T]rust instrument contemplates the simultaneous service of more than one trustee and the California petition was silent on [Ms.] Geer's disputed claim of trusteeship.

20. Whether the [orphans'] court erred or abused its discretion by imposing sanctions based exclusively on the Beneficiaries' conduct in a California court, when that California court had already addressed the subject matter of the contempt motion.

21. Whether the [orphans'] court erred or abused its discretion by finding that the Beneficiaries had intentionally violated the [orphans'] court's orders dated December 6, 2019, October 1, 2020, and/or October 8, 2020.

22. Whether the [orphans'] court erred or abused its discretion, considering that [Ms.] Geer (*i.e.*, the movant) owed a fiduciary duty to the Beneficiaries.

Appellants' Brief at 3-9 (unnecessary capitalization omitted; emphasis in original).

- 16 -

Preliminarily, we must determine whether this appeal is properly before us. "[T]he question of appealability implicates the jurisdiction of this Court[,]" and we may raise this issue *sua sponte*. **McGrogan v. First Commonwealth Bank**, 74 A.3d 1063, 1074 (Pa. Super. 2013) (citation omitted). Generally, this Court has jurisdiction only over appeals taken from final orders. **See** Pa.R.A.P. 341(a); **Angelichio v. Myers**, 110 A.3d 1046, 1048 (Pa. Super. 2015). We have long recognized that "[a]n order finding a party in contempt for failure to comply with a prior order of court is final and appealable, **if sanctions are imposed**." **Foulk v. Foulk**, 789 A.2d 254, 257 (Pa. Super. 2001) (*en banc*) (citations omitted; emphasis added). **See also Glynn v. Glynn**, 789 A.2d 242, 248 (Pa. Super. 2001) ("[F]or a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the contemnor and that no further court order be required before the sanctions take effect."). Conversely, "[u]ntil sanctions are actually imposed by the trial court, an order declaring a party in contempt is interlocutory and not appealable." **Lachat v. Hinchcliffe**, 769 A.2d 481, 488 (Pa. Super. 2001).

In the case *sub judice*, the March 12, 2021 order declared Appellants in contempt of court and ordered them to pay the attorneys' fees and costs incurred by Appellees in connection with litigating the contempt petition and contesting Appellants' California filing; however, a separate hearing was scheduled to determine the precise amount of fees and costs. Thus, the contempt order did not become final and appealable until the entry of the July 8, 2021 order, which declared the amount of attorneys' fees and costs to be

paid by Appellants. ***Foulk***, ***supra***; ***Glynn***, ***supra***; ***Lachat***, ***supra***. We therefore conclude that while Appellants' claims appear to relate to the original March 12, 2021 contempt order, the appeal properly lies from the July 8, 2021 order, which finalized the contempt order and indicated the amount of sanctions to be imposed. ***See Quinn v. Bupp***, 955 A.2d 1014, 1020 (Pa. Super. 2008) ("[I]nterlocutory orders that are not subject to immediate appeal as of right … become reviewable on appeal upon the trial court's entry of a final order.") (citations and brackets omitted).

Prior to undertaking any analysis of the merits of the numerous issues raised by Appellants, we must next determine whether Appellants have properly preserved their issues for appellate review. It is well-settled that appellate briefs must conform in all material respects with the briefing requirements set forth in our Rules of Appellate Procedure. Pa.R.A.P. 2101. "This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." ***In re Ullman***, 995 A.2d 1207, 1211 (Pa. Super. 2010). ***See also*** Pa.R.A.P. 2114-2119 (addressing the specific requirements for each subsection of an appellate brief).

Relevant to our discussion in the instant matter, Rule 2116 provides that:

> [The] Statement of Questions Involved … must state **concisely** the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it

is stated in the statement of questions involved or is fairly suggested thereby….

Pa.R.A.P. 2116(a) (emphasis added).[7]

Moreover, as to the argument section of an appellate brief, Rule 2119(a) provides:

The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part – in distinctive type or in type distinctively displayed – the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

Importantly, where an appellant fails to raise or properly develop issues on appeal, or where his or her brief is wholly inadequate to present specific issues for review, we will not consider the merits of the claims raised on appeal. *See Butler v. Illes*, 747 A.2d 943, 944-45 (Pa. Super. 2000) (determining that the appellant waived her claim where she failed to set forth an adequate argument concerning her claims on appeal; the appellant's argument lacked meaningful substance and consisted of mere conclusory statements; the appellant failed to cogently explain or even tenuously assert

_____

[7] Similarly, where the trial court directs the appellant to file a concise statement of errors complained of on appeal, Rule 1925(b) provides that the statement shall "set forth only those errors that the appellant intends to assert … [and] … *concisely* identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(i), (ii) (emphasis added). "Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[,]" and "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(v), (vii).

why the trial court abused its discretion or made an error of law). ***See also Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining that the appellant's arguments must adhere to the Rules of Appellate Procedure and that arguments which are not appropriately developed are waived on appeal; arguments that are not appropriately developed include those where the party has failed to cite relevant authority in support of his or her contention); ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002) (stating that the Rules of Appellate Procedure make clear that an appellant must support each question raised by discussion and analysis of pertinent authority; absent a reasoned discussion of the laws in an appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of the issue on appeal).

Instantly, we begin by noting with displeasure Appellants' failure to concisely state the issues which they wish to have resolved on appeal, in violation of Rule 2116(a). While the history of this case is rather involved, this appeal stems from a straightforward civil contempt order imposing sanctions on Appellants in the form of attorneys' fees and costs incurred by the other parties. We deem the 22 issues listed in Appellants' Statement of Questions Involved and spanning 6 pages in their brief to be excessive under such circumstances. ***See Jones v. Jones***, 878 A.2d 86, 89-90 (Pa. Super. 2005) (finding waiver where the appellant raised twenty-nine issues in her seven-page Rule 1925(b) statement); ***Kanter v. Epstein***, 866 A.2d 394, 401 (Pa. Super. 2004) (concluding that the defendants in a relatively

straightforward breach of contract action had violated the Rules of Appellate Procedure by raising an outrageous number of issues in their 1925(b) statements). **But cf. Mahonski v. Engel**, 145 A.3d 175, 180-81 (Pa. Super. 2016) (noting that our Supreme Court has distinguished from **Kanter** the underlying facts of a case in which the appellants had a reasonable basis to include a large number of issues in their 1925(b) statement as they had filed a complicated lawsuit with numerous counts and multiple defendants that resulted in a large number of trial court rulings) (citing **Eiser v. Brown Williamson Tobacco Corp.**, 938 A.2d 417, 427-28 (Pa. 2007)). Additionally, we admonish Appellants for their failure to comply with Rule 2119(a). Although they set forth 22 issues for our review in their Statement of Questions Involved, the argument portion of their brief contains only two sections – the first being further divided into four subsections. Appellants' failure to adhere to our briefing requirements frustrates our appellate review; however, we decline to quash the appeal on these grounds. **See In re Ullman**, 995 A.2d 1207, 1211 (Pa. Super. 2010) ("This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure.").

Nevertheless, we deem numerous claims waived based on the following additional transgressions. For instance, Appellants appear to have abandoned issues 19 (regarding whether the orphans' court erred in determining that an action pending in California impeded upon its exclusive jurisdiction to determine whether Ms. Geer is the lawful Trustee of the DFT), 20 (concerning

whether the orphans' court erred by imposing sanctions based on the Beneficiaries' conduct in a California Court), and 22 (as to whether the orphans' court erred considering that Ms. Geer owed a fiduciary duty to the Beneficiaries). There is no mention whatsoever of these claims in the Argument section of their brief. Hence, we are constrained to deem these issues waived. *See Estate of Haiko*, *supra*.

Issues 11 and 12 (regarding whether the orphans' court erred in imposing notice requirements on the Beneficiaries) are only briefly mentioned in Appellants' Summary of Argument in the form of a conclusory statement. *See* Appellants' Brief at 17 ("[T]he [orphans' c]ourt improperly imposed a requirement that the Beneficiaries provide advance notice of any planned legal actions involving the parties in any jurisdiction – potentially impacting the Beneficiaries' right to due process of law. Also, and without explanation, the [orphans' c]ourt required the Beneficiaries to report any knowledge of any contemplated use of intellectual property previously in the DFT.") (internal citation to record omitted). Appellants provide no legal support or analysis for these contentions whatsoever, and we therefore deem their issues waived. *See In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (citations omitted).

Our review of Appellants' argument further reveals that many of their claims – namely, issues 4 through 10, relating to the attorneys' fees awarded by the orphans' court – are woefully underdeveloped and are unsupported by any citation to the record or relevant legal authority, in violation of Rule 2119(a), and/or were not mentioned by Appellants in their Statement of Questions Involved, as mandated by Rule 2116(a). *See* Appellants' Brief at 24-26; Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent"). In the corresponding section of their argument, Appellants first contend that the court's determination of a fee award was wholly improper and "contradicts controlling precedent." Appellants' Brief at 24 (unnecessary capitalization omitted). We need not consider the merits of this contention, however, as Appellants failed to include this claim in their Statement of Questions Involved. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Wirth v. Commonwealth*, 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.") (citation omitted).

Alternatively, Appellants argue that even if the award of attorneys' fees was appropriate here, the particular fee amounts awarded are improper. Appellants' Brief at 24. Nonetheless, their argument consists merely of general statements unsupported by any discussion and analysis of relevant

legal authority. For instance, underpinning their claim, Appellants baldly assert that the orphans' court made no inquiry into their ability to pay the legal fees, nor did it afford them any opportunity to purge themselves of their alleged contemptuous conduct. *Id.* at 26. Appellants fail to explain how this constitutes an abuse of discretion. Moreover, they conclusively state that lower courts do not have the authority to award future attorneys' fees, attorneys' fees to non-movants, and/or attorneys' fees related to litigation pending before other courts. *Id.* at 25. Their argument is void, however, of any meaningful discussion of, or citation to, relevant legal authority. The only case cited by Appellants in this section of their argument is *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 69 (Pa. Super. 2016), for the proposition that an award of counsel fees in connection with a civil contempt finding can be coercive and compensatory, but not punitive. Yet, Appellants fail to explain how this applies to the instant matter. It is not our job to develop this argument on behalf of Appellants. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). Hence, we conclude that issues 4 through 10 are waived due to Appellants' failure to develop their argument. *See Lackner*, *supra*; *Estate of Haiko*, *supra*; *Butler, supra*.[8]

---

[8] To the extent that Appellants argue that the fees awarded to Ms. Geer were improper, as her attorneys' fees had been primarily paid by her malpractice insurer, and that the fees awarded to the DFT were "functionally impossible[,]" *see* Appellants' Brief at 26-27, we deem these issues waived due to Appellants' failure to include them in their Statement of Questions involved. *See* Pa.R.A.P. 2116(a); *Wirth*, *supra*.

We review Appellants' remaining claims mindful of the following:

[O]ur scope of review when considering an appeal from an order holding a party in contempt of court is narrow. **Hyle v. Hyle**, 868 A.2d 601[, 604] … (Pa. Super. 2005). We will reverse only upon a showing of an abuse of discretion. **Lachat**, 769 A.2d at 487. This [C]ourt must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. **Id.**

**Rhoades v. Pryce**, 874 A.2d 148, 153 (Pa. Super. 2005).

We begin our analysis by addressing issues 1 through 3, 14 through 18, and 21, jointly, as each of these claims are included in Section A of Appellants' Argument and relate to the orphans' court's finding Appellants in contempt for the intentional violation of its prior orders. **See** Appellants' Brief at 18-28. Essentially, Appellants aver that the orphans' court abused its discretion by failing to apply the appropriate standard for civil contempt. **Id.** at 18.

It is well-established that:

To find one in civil contempt, a complainant must prove by a preponderance of the evidence that the respondent is in noncompliance with a court order. The order must be clear, definite, and specific. To sustain a finding of civil contempt, the complainant must prove that: (1) the contemnor had notice of the specific order or decree which he is alleged to have violated; (2) the act constituting the contemnor's violation was volitional, and (3) the contemnor acted with wrongful intent.

**Thomas v. Thomas**, 194 A.3d 220, 226 (Pa. Super. 2018). "Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant." **Sutch**, 142 A.3d at 67. "A person may not be held in contempt

of court for failing to obey an order that is too vague or that cannot be enforced." *Id.* at 68.

By way of review, the orphans' court's December 6, 2019, October 1, 2020, and October 8, 2020 orders form the basis of the contempt finding in the instant matter. The December 6, 2019 order provided in pertinent part: "Until further [o]rder of [c]ourt, there is to be no disbursement, distribution, or encumbrance of any asset of the [DFT]." Order, 12/6/19, at ¶ 1(a). The October 1, 2020 order scheduled a hearing on the issue of Ms. Geer's status as Trustee of the DFT and stated: "This court's orders in this case, including the December 6, 2019 order enjoining all parties [from] disbursing, distributing[,] or encumbering any asset of the [DFT], remain in full force and effect. Any violation of the December 6, 2019 order will subject the violator to contempt of court sanctions." Order, 10/1/20, at ¶ 4 (unnecessary capitalization omitted). On October 8, 2020, the orphans' court issued an order declaring, *inter alia*:

> This court has determined that it has subject matter jurisdiction to decide the status of Louise Geer as Trustee of the [DFT]. Nonetheless, this court does not have authority to enjoin any party from filing matters, no matter how frivolous, in other jurisdictions throughout this country. But all parties to this matter are before this court and this court has exclusive jurisdiction to decide whether or not [Ms.] Geer was appointed as Trustee of the [DFT] and whether or not [Ms.] Geer continues to be the lawful Trustee of the [DFT]. All parties will be bound by this court's decision.

Order, 10/8/20, at ¶ 6 (unnecessary capitalization omitted).

Instantly, there is no question that Appellants had notice of the orders which they are alleged to have violated. **See** Order, 3/2/21 (single page) (declaring that "the element of notice has … been established as a matter of law[,]" as Appellants and their counsel have each "judicially admitted" that they had notice of the court's orders that they allegedly violated as set forth in Ms. Geer's motion for contempt). **See also** N.T., 3/3/21, at 31-34 (Lorraine's testifying that she had notice of each of the orders and that she understood what each order meant). Thus, the first element of establishing civil contempt has been met. **See Thomas**, **supra**.

Appellants' claims regarding the orphans' court's finding them in contempt are directed toward the second and third elements set forth in **Thomas**, *i.e.*, whether the act constituting their violation was volitional, and whether they acted with wrongful intent. First, Appellants contend that the court erred in determining their October 29, 2020 filing in San Mateo, California "was done intentionally and with the intent of effecting the transfer of assets of the [DFT]" to Appellants, in direct violation of the court's prior orders. Appellants' Brief at 21-22 (citing OCOO at ¶¶ 20, 24). Their argument is primarily based on the faulty premise that the orphans' court "glossed over the undisputed fact that the DFT did not hold any intellectual property rights" at the time this action was commenced. **See id.** at 20 (asserting that Appellants removed the intellectual property rights from the DFT on February 20, 2019, immediately following the bankruptcy dismissal, and then sold them to 26th Century; alternatively, Ms. Geer and the Intervenors contend that the

NFT acquired the intellectual property rights from the DFT as part of a settlement agreement reached on February 28, 2019). Based on their allegation regarding the nonexistence of Trust assets at the time, they conclude that it would have been "impossible" for them to violate any of the court's orders prohibiting the transfer, disbursement, or encumbrance of Trust assets. *Id.* at 22. We are unconvinced.

It is hardly an "undisputed fact[,]" as Appellants suggest, that when Ms. Geer commenced this action, the DFT no longer possessed any intellectual property rights. To the contrary, the status and value of the Trust assets were very much still in dispute at the time Appellants were held in contempt of court. A bifurcated trial was still pending, with a hearing on Ms. Geer's proposed distribution of the DFT assets to be held separately from the hearing regarding whether Ms. Geer was lawfully appointed as the Trustee. Additionally, we note that the orphans' court did not find Lorraine's testimony regarding the alleged February 20, 2019 transfer of Trust assets to be credible. *See* OCOO at ¶ 19. Not to mention the fact that the court's ultimate determination regarding Ms. Geer's status as Trustee could potentially affect the ownership of Trust assets, *e.g.*, the purported settlement agreement between the DFT and NFT may be found invalid. *See* Order, 2/24/20, at ¶ 3 (granting the Intervenor's petition to intervene and acknowledging that if the court determines "[Ms.] Geer was not the lawful and authorized Trustee of the [DFT] when she entered the … Settlement Agreement [with the NFT] or Trademark Assignment [with the BRC], that ruling will have a direct effect on

any claim by the Intervenors to the rights in the name and trademark of Buck Rogers).

Moreover, we believe Appellants' insistence that they could not be in contempt of the orphans' court's orders because the DFT no longer held any intellectual property rights is disingenuous, considering that the December 6, 2019 order forbidding the disbursement, distribution, or encumbrance of any DFT asset was entered in response to Appellants' own motion seeking an injunction against all parties prohibiting the transfer, disbursement, distribution, or encumbrance of any asset of the DFT. *See* Emergency Petition for Preliminary Injunction, 12/4/19, at ¶ 20 ("The Beneficiaries request a preliminary injunction preventing [Ms.] Geer from taking any action in her purported capacity as trustee of the DFT and to prevent the use, sale, transfer or other disposition of any asset of the DFT."); *id.* at ¶ 22 (claiming "the Beneficiaries have discovered that [Ms.] Geer has attempted to transfer certain of the DFT's trademarks and other intellectual property rights in the United States and abroad"). *See also* OCOO at ¶ 17 (noting that Robert testified in his deposition on November 18, 2020 that "he believed the [DFT] owned certain intellectual property rights and that the petition in San Mateo County was presented to secure the distribution to [him] and his sister"). Thus, no relief is due on this basis.

As for Appellants' alleged violation of the October 8, 2020 order, they argue:

> If the [orphans' c]ourt lacked the "authority to enjoin any party from filing matters, no matter how frivolous, in other jurisdictions throughout this country," it reasonably appeared to [Appellants] that their California filing could not have violated any [o]rder of the [orphans' c]ourt. Therefore, even if any of the [o]rders could reasonably have been read to forbid [Appellants'] California filing (but they couldn't have been), [Appellants] still would not have been in civil contempt since "a person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced." *Sutch*, 142 A.3d at 67-68.

*Id.* at 23-24. This claim has no merit. The orphans' court's lack of authority to enjoin Appellants from filing actions in other jurisdictions is not dispositive as to whether their actions constituted an intentional and volitional violation of the court's order. The October 8, 2020 order clearly stated that the orphans' court had "exclusive jurisdiction to decide whether or not [Ms.] Geer was appointed as Trustee of the [DFT] and whether or not [Ms.] Geer continues to be the lawful Trustee of the [DFT]. All parties will be bound by this [c]ourt's decision." Order, 10/8/20, at ¶ 6. Nonetheless, Appellants subsequently filed their petition in San Mateo, California, asserting that Mr. Fox was the acting Trustee of the DFT, and seeking to approve his distribution of "all Trust assets" to Appellants. *See* OCOO at ¶¶ 9-11. *See also id.* at ¶¶ 10, 13 (noting that Appellants' filing in San Mateo claimed there were no other interested parties – other than Appellants and Mr. Fox – and made no mention of Judge Klein's order dismissing Appellants' earlier petition with prejudice based on his finding that California did not have jurisdiction over Ms. Geer or the DFT).

Lastly, Appellants conclude there is "no credible argument that the three [o]rders … which [they] are alleged to have violated[] are '**definite, clear, and specific** – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct[,]' as would have been required to support a finding of civil contempt." Appellants' Brief at 24 (quoting **Sutch**, 142 A.3d at 67; emphasis added by Appellants). We deem this argument waived, as Appellants fail to explain how the order(s) are vague and/or in what way they raise any doubt as to the type of conduct prohibited by the court. **See In re S.T.S., Jr.**, **supra**. We decline to develop an argument on Appellants' behalf. **See Hardy**, **supra**. Nevertheless, we would conclude that the orphans' court's December 6, 2019, October 1, 2020, and October 8, 2020 orders are clear and unambiguous.

In sum, we believe that the orphans' court's findings which led to its determination that Appellants volitionally acted with wrongful intent in violation of its prior orders are supported by the record, and we discern no abuse of discretion. Thus, we conclude all three prongs have been established to sustain the court's finding of civil contempt. **See Thomas**, **supra**.

Finally, we consider the merits of issue 13, regarding the orphans' court's credibility determination as to Lorraine, which Appellants address in Section B of their Argument. **See** Appellants' Brief at 28-32. As stated in the orphans' court's March 12, 2021 Findings of Fact, "Lorraine … testified that the intellectual rights owned by the [DFT] were transferred to she [*sic*] and her brother on February 20, 2019[,] and that she and her brother immediately

- 31 -

sold those intellectual rights to 26th Century … in exchange for significant stock in 26th Century…." OCOO at 5 ¶ 19.  For the purposes of the contempt hearing, the orphans' court did not find this testimony credible, stating the following reasons:

   a.  Evidence presented showed that 26th Century … did not come into existence until May 2, 2019.[9]

   b.  Lorraine … testified that there was a written document transferring the intellectual rights owned by the Trust. However, she did not produce any such document in the extensive discovery that had taken place in this case and could not produce any such document at the time of the hearing (although she claimed she did have a copy somewhere).

   c.  [Appellants] had notice of the December 6, 2019, October 1, 2020, and October 8, 2020 [o]rders of [c]ourt.

*Id.*

Appellants accuse Ms. Geer and her counsel of "deceiv[ing]" the orphans' court into believing that 26th Century did not exist in February 2019 by "falsely present[ing] an Information Statement … to support a finding of an inaccurate formation date."  Appellants' Brief at 29.  They contend that they were unable to produce evidence at the contempt hearing to establish the 26th Century's purported "actual filing date" of February 25, 2019, only because the court "did not direct the parties to exchange exhibits prior to the [c]ontempt [h]earing," and they "could not have predicted" that Ms. Geer would introduce such "misleading evidence."  *Id.* at 28.  Two days after the

_____

9 *See* N.T., 3/12/21, at 113-14 (Ms. Geer's counsel's entering into evidence the Secretary of State of California's corporate filing docket, indicating that 26th Century was not formed until May 2, 2019).

close of the hearing, Appellants sought to supplement their exhibits "to allow the [c]ourt a clear view of the facts," but the court granted a motion to strike filed by Ms. Geer.[10]   Instantly, Appellants claim that the orphans' court's acceptance of Ms. Geer's "misleading evidence, without allowing [them] an opportunity to rebut that evidence [was] legal error."  *Id.* at 31.  Additionally, they suggest that the court "erred once more" by granting Ms. Geer's motion to strike their supplemental exhibits.   *Id.* at 30.   We deem Appellants' arguments to be wholly without merit.

To the extent that Appellants are asking this Court to reassess the orphans' court's credibility determinations, we simply cannot do that.  *See Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) ("The trial court, as the finder of fact, is free to believe all, part[,] or none of the evidence presented.  Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.") (internal citations and quotation marks omitted).

On the other hand, to the extent that Appellants claim the orphans' court erred in not allowing them the opportunity to rebut Ms. Geer's evidence regarding 26th Century's registration date and in denying them reconsideration

---

[10] Appellants filed a motion for reconsideration of, *inter alia*, the orphans' court's granting of Ms. Geer's Motion to Strike Beneficiaries' Praecipe to Supplement Exhibits; however, following a hearing on the matter, Appellants' motion was denied.  *See* Order, 3/24/21, at 1-2.

of its decision to strike their petition to supplement their exhibits, we conclude that Appellants have waived these issues, as they are not included in their Statement of Questions Involved. ***See*** Pa.R.A.P. 2116(a); ***Wirth***, ***supra***. The issue of whether the court erred in finding Lorraine's testimony not credible is a different claim than whether the court erred in denying Appellants' request to supplement the record post-hearing, and we do not believe that the latter constitutes a "subsidiary question[] fairly comprised" within the former. Pa.R.A.P. 2116(a).

Nevertheless, even if Appellants had preserved their evidentiary issues, we would conclude that no relief is due. In their effort to attack the orphans' court's finding that 26th Century was not formed until May 2019, Appellants improperly reference documents that are not a part of the certified record and, therefore, cannot be considered by this Court. ***See*** Appellants' Brief at 29-30 (citations omitted). ***See also Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) ("[A]n appellate court is limited to considering only the materials in the certified record when resolving an issue…. [U]nder the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent – a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.") (citations omitted).

Moreover, it is generally within the discretion of the trial court to reopen the record at the request of a party, prior to final judgment, for the purpose of presenting additional evidence. ***See Commonwealth v. Safka***, 141 A.3d

1239, 1249 (Pa. 2016) ("[I]t is well-established that the trial court has discretion to permit either side to reopen the case to present additional evidence prior to the verdict, the exercise of which is directed at preventing a failure or a miscarriage of justice."). A trial court's ruling denying a request for the introduction of additional evidence will only be disturbed where the court has abused its discretion. *In re J.E.F.*, 409 A.2d 1165, 1166 (Pa. 1979). Instantly, Appellants' single-sentence praecipe merely asked the court to "[k]indly [s]upplement the within Exhibits" for the March 3, 2021 contempt hearing, providing no explanation whatsoever as to why the court should allow the supplementation of evidence or how the denial of such request would lead to a miscarriage of justice. As the orphans' court explained at the hearing on the motion for reconsideration:

> Inasmuch as [Appellants are] requesting the [c]ourt to look at evidence that was not introduced, not offered, not accepted into evidence, not admitted into evidence, the [c]ourt cannot do that and will not do it. I haven't looked at the exhibits that are attached[,] … and I'm not going to look at those exhibits.

N.T., 3/23/21, at 2. We would not discern an abuse of discretion in the orphans' court's decision to deny reconsideration of its striking Appellants' praecipe to supplement exhibits where Appellants had the opportunity to produce such evidence at the contempt hearing but failed to do so, and did not provide the orphans' court with any reason to permit supplementation.

Finally, we would not be persuaded by Appellants' argument that they could not have known they would need to produce evidence at the contempt hearing to establish the formation of 26th Century. Appellants knew that Ms.

Geer was seeking to have them found in contempt for, *inter alia*, violating the December 6, 2019 order, which prohibited the transfer, disbursement, or encumbrance of DFT assets. Given Appellants' position that they could not have violated the order because they had already transferred all of the DFT assets to themselves on February 20, 2019, and then immediately sold them to 26th Century in exchange for stock, we would determine that they should have been prepared to introduce evidence to support their defense, *e.g.*, documentation regarding the transfer of assets from the DFT to Appellants; the sale of assets from Appellants to 26th Century; Appellants' acquisition of 26th Century stock. Moreover, we would note that the orphans' court did not find Lorraine's testimony incredible solely based on her inability to produce evidence that 26th Century was in existence as of February 20, 2019. Rather, the court also opined that Lorraine failed to "produce any document in the extensive discovery that had taken place in this case and could not produce any such document at the time of the hearing" to prove that Appellants transferred the intellectual rights owned by the DFT to themselves on February 20, 2019. OCOO at ¶ 19(b). **See also id.** at ¶ 19(c) (further noting that Appellants had notice of the December 6, 2019, October 1, 2020, and October 8, 2020 orders).

Accordingly, we affirm the orphans' court's July 8, 2021 order imposing sanctions in the amount of $85,883.00, after its finding Appellants in contempt of court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/18/2023